# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| ANTONIO SANCHEZ OCHOA, *et al.*, | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) Civil Action No. 1:17-cv-3124 |
| ED W. CAMPBELL, *et al.*, | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

## STATEMENT OF INTEREST ON BEHALF OF
## THE UNITED STATES

CHAD A. READLER
*Acting Asst. Attorney Gen.*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

Dated July 21, 2017

EREZ REUVENI
*Senior Litigation Counsel*
U.S. Dept. of Justice
Civil Division,
450 5th St. NW
Washington, D.C. 20530
Tel: 202-307-4293
Erez.r.reuveni@usdoj.gov

*Counsel for the United States*

## <u>TABLE OF CONTENTS</u>

INTERESTS OF THE UNITED STATES ..................................................2

STATEMENT OF THE CASE..................................................................4

  I.  Statutory, Regulatory, and Procedural Background ........................4

      A. Federal/State Cooperation Under the INA ...........................5

      B. Federal Immigration Detainers................................................8

      C. Yakima County's Policy Concerning Cooperation With ICE and
         Contractual Relationship with ICE ....................................16

      D. Mr. Ochoa's State Arrest and Ongoing Detention on State Charges..18

      E. Mr. Ochoa's Custodial Status When and If He Post Bond ................19

SUMMARY OF THE ARGUMENT ....................................................21

ARGUMENT ...................................................................................22

  I.  States and Localities May Cooperate with Immigration Enforcement at the
     Request of the Federal Government ..........................................22

  II.  It Is Not Unconstitutional to Cooperate With the Federal Government's
      Detainer Requests, Which are Accompanied by Warrants Based on Probable
      Cause..............................................................................26

      A. Complying with detainers issued pursuant to the ICE's detainer
         policies is fully consistent with the Fourth Amendment....................29

      B. State and local officers may rely on the probable cause determinations
         made by ICE contained in its administrative warrants ......................35

Statement of Interest of the United States – i

C. States and localities cooperating with Federal immigration enforcement efforts may temporarily detain aliens at the request or direction of the Federal Government based solely on probable cause of a civil immigration violation..............................................37

CONCLUSION .......................................................47

CERTIFICATE OF SERVICE .............................................48

Statement of Interest of the United States – ii

1
2
3
4

# TABLE OF AUTHORITIES

## CASES

*Abel v. United States*,
    362 U.S. 217 (1960) ............................................................... 12, 33, 38

*Andrews v. State*,
    962 So. 2d 971 (Fla. Dist. Ct. App. 2007)..................................... 16, 42

*Arizona v. United States*,
    567 U.S. 387 (2012) .......................................................... 22, ***passim***

*Arkansas v. Sullivan*,
    532 U.S. 769 (2001) ......................................................................39

*Atwater v. City of Lago Vista*,
    532 U.S. ......................................................................... 39, 44, 46

*Blondin v. Dubois*,
    78 F. Supp. 2d 283 (S.D.N.Y. 2000) .....................................................1

*Bruce v. Guernsey*,
    777 F.3d 872 (7th Cir.2015) ...........................................................40

*Buquer v. City of Indianapolis*,
    No. 1:11-cv-00708-SEB-MJD, 2013 WL 1332158 (S.D. Ind. Mar. 28, 2013) ...26

*Carlson v. Landon*,
    342 U.S. 524 (1952) ......................................................................31

*Chavez v. City of Petaluma*,
    No. 14-CV-5038, 2015 WL 6152479 (N.D. Cal. Oct. 20, 2015).........................42

*Chung Young Chew v. Boyd*,
 309 F.2d 857 (9th Cir. 1962) ................................................................10

*Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*,
 644 F. Supp. 2d 1177 (N.D. Cal. 2009)................................................11

*Cruz v. Kauai County*,
 279 F.3d 1064 (9th Cir. 2002) ...............................................................27

*De La Paz v. Coy*,
 786 F.3d 367 (5th Cir. 2015) .................................................................32

*Demore v. Kim*,
 538 U.S. 510 (2003) ...............................................................................31

*Duamutef v. INS*,
 386 F.3d 172 (2d Cir. 2004) ..................................................................13

*Dunaway v. New York*,
 442 U.S. 200 (1979) ...............................................................................44

*Flatow v. Islamic Republic of Iran*,
 305 F.3d 1249 (D.C. Cir. 2002)................................................................1

*Furrow v. U.S. Bd. of Parole*,
 418 F. Supp. 1309 (D. Me. 1976)................................................... 16, 42

*Galarza v. Szalczyk*,
 745 F.3d 634 (3d Cir. 2014) ....................................................................9

*Garcia v. Speldrich*, No. 13–CV–3,
 182, 2014 WL 3864493 (D. Minn. Aug. 6, 2014)................................37

*Garcia v. Taylor*,
 40 F.3d 299 (9th Cir. 1994) ..................................................................28

*Gardner v. Cal. Highway Patrol*,
 No. 2:14-CV-2730, 2015 WL 4456191 (E.D. Cal. July 20, 2015) ....................42

Statement of Interest of the United States – iv

*Gerstein v. Pugh,*
 420 U.S. 103 (1975) ...................................................................................32

*Gonzales v. Peoria,*
 722 F.2d 468 (9th Cir. 1983) ......................................................................41

*Gonzalez v. ICE*, No. 13-4416,
 2017 WL 2559616 (C.D. Cal. June 12, 2017).........................................32

*Henderson v. Simms,*
 223 F.3d 267 (4th Cir. 2000) ......................................................................42

*Illinois v. Andreas,*
 463 U.S. 765 (1983) ...................................................................................35

*Immigration & Naturalization Servs. v. Lopez–Mendoza,*
 468 U.S. 1032 (1984) .................................................................................30

*J. E. F.M. v. Lynch,*
 *837 F.3d 1026 (9th Cir. 2016)*....................................................................31

*Johnson v. Phillips,*
 664 F.3d 232 (10th Cir. 2008) ....................................................................45

*Kleindienst v. Mandel,*
 408 U.S. 753 (1972) .....................................................................................4

*In re Korner,*
 50 Cal. App. 2d 407 (Cal. Dist. Ct. App. 1942).......................................10

*La. Forestry Ass'n, Inc. v. Sec'y U.S. Dep't of Labor,*
 745 F.3d 653 (3d Cir. 2014) .........................................................................6

*Liu v. Richard M. Phillips,*
 234 F.3d 55 (1st Cir. 2000) ........................................................................37

*Locke v. United States,*
 11 U.S. (7 Cranch) 339 (1813) ...................................................................39

*Lopez v. INS*,
    758 F.2d 1390 (10th Cir. 1985) ................................................... 28, 33

*Marshall v. Barlow's, Inc*.,
    436 U.S. 307 (1978) ...................................................................32

*Matter of Lehder*,
    15 I. & N. Dec. 159 (BIA 1975) .........................................................10

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ...........................................................26

*Miranda–Olivares v. Clackamas Cnty*., No. 3:12–cv–02317–ST,
    2014 WL 1414305 (D. Or. Apr. 11, 2014) ............................................ 27, ***passim***

*Morales v. Chadbourne*,
    793 F.3d 208 (1st Cir. 2015) ...........................................................27

*Morales v. Chadbourne*,
    No. 12-301-M-LDA, 2017 WL 354292 (D.R.I. Jan. 24, 2017) ..........................34

*Moreno v. Napolitano*,
    213 F. Supp. 3d  (N.D. Ill. 2016)................................................ 28, 33, 35

*Orellana v. Nobles County*,
    15-3852, 2017 WL 72397 (D. Minn. Jan. 6, 2017)...............................35

*Ovando-Garzo v. U.S.*,
    752 F.3d .................................................................................25

*People v Xirum*,
    993 N.Y.S.2d 627 (N.Y. Sup. Ct. 2014).............................................37

*Preap v. Johnson*,
    831 F.3d 1193 (9th Cir. 2016) ...........................................................9

*Rhoden v. United States*,
    55 F.3d 428 (9th Cir. 1995) ...........................................................32

Statement of Interest of the United States – vi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rinaldi v. United States*,
    484 F. Supp. 916 (S.D.N.Y. 1977) ........................................................................10

*Santos v. Frederick Cnty. Bd. of Comm'rs*,
    725 F.3d 451 (4th Cir. 2013) ......................................................................... 25, 41

*Slavik v. Miller*,
    89 F. Supp. 575 ........................................................................................10

*Smith v. State*,
    719 So. 2d 1018 (Fla. Dist. Ct. App. 1998) ..........................................................37

*Soldal v. Cook Cnty.*,
    506 U.S. 56 (1992) .................................................................................... 32, 39

*Thomas v. City of Peoria*,
    580 F.3d 633 (7th Cir. 2009) ........................................................................ 39, 46

*U.S. v. Juarez-Velasquez*,
    763 F.3d 430 ............................................................................................27

*United States v. Brobst*,
    558 F.3d 982 (9th Cir. 2009) ...........................................................................44

*United States v. Burtton*,
    599 F.3d 823 (8th Cir.2010) ......................................................................... 40, 46

*United States v. Capelton*,
    350 F.3d 231 (1st Cir. 2003) ...........................................................................36

*United States v. Cardona*,
    903 F.2d 60, (1st Cir. 1990) ...........................................................................42

*United States v. Celio*,
    945 F.2d 180 (7th Cir. 1991) ..........................................................................36

*United States v. Chaklader*,
    987 F.2d 75 (1st Cir. 1993) ...........................................................................16

Statement of Interest of the United States – vii

*United States v. Comstock*,
   560 U.S. 126 (2010) ...................................................................39

*United States v. Duka*,
   671 F.3d 329 (3d Cir.2011) ........................................................40

*United States v. Gilmore*,
   776 F.3d 765 ................................................................................40

*United States v. Hensley*,
   469 U.S. 221 (1985) ............................................................... 35, 36

*United States v. Lucas*,
   499 F.3d 769 (8th Cir. 2007) .....................................................42

*United States v. Perdoma*,
   621 F.3d 745 (8th Cir. 2010) .....................................................39

*United States v. Phillips*,
   834 F.3d 1176 (11th Cir. 2016) ............................................. 38, 45

*United States v. Powell*,
   732 F.3d 361 (5th Cir. 2013) .....................................................36

*United States v. Quintana*,
   623 F.3d 1237 (8th Cir. 2010) ...................................................25

*United States v. Ramirez*,
   473 F.3d 1026 (9th Cir. 2007) ...................................................36

*United States v. Robinson*,
   536 F.2d 1298 (9th Cir. 1976) ...................................................36

*United States v. Soriano-Jarquin*,
   492 F.3d 495 (4th Cir. 2007) .....................................................26

*United States v. Timms*,
   664 F.3d 436 (4th Cir. 2012) .....................................................40

Statement of Interest of the United States – viii

*United States v. Winter*,
   730 F.2d 825 (1st Cir. 1984) ........................................................ 16, 18

*Virginia v. Moore*,
   553 U.S. 164 (2008) ............................................................ 43, 46, 47

*Whren v. United States*,
   517 U.S. 806 (1996) ................................................................ 43, 44

## **FEDERAL STATUES**

6 U.S.C. § 202 ..............................................................................6

8 U.S.C. 1101 ...............................................................................5

8 U.S.C. § 1103(a)(11)(B) ..............................................................6

8 U.S.C. § 1226 ...........................................................................29

8 U.S.C. § 1226(a) ......................................................... 17, ***passim***

8 U.S.C. § 1226(c)(1) ............................................................. 12, 13

8 U.S.C. § 1229a .........................................................................31

8 U.S.C. § 1231(a) ......................................................................29

8 U.S.C. § 1231(a)(4)(A) ..............................................................13

8 U.S.C. § 1252(a) (1952).......................................................... 12, 31

8 U.S.C. § 1252c ..........................................................................7

8 U.S.C. § 1324(c) ........................................................................7

8 U.S.C. § 1325 ...........................................................................31

8 U.S.C. § 1357(a)(2)....................................................................13

8 U.S.C. § 1357(d) ...................................................................................10

8 U.S.C. § 1357(g) ....................................................................................6

8 U.S.C. 1357(g)(1) .................................................................................23

8 U.S.C. § 1357(g)(1)-(9) .........................................................................6

8 U.S.C. § 1357(g)(10) ..............................................................................7

8 U.S.C. § 1357(g)(10)(B) ................................................................ 23, 41

8 U.S.C. § 1357(g)(3) ................................................................................6

8 U.S.C. § 1373 .........................................................................................7

8 U.S.C. § 1101(a)(13)(A) .......................................................................30

8 U.S.C. § 1182(d)(5) ..............................................................................30

28 U.S.C. § 517 .........................................................................................1

28 U.S.C. § 518 .........................................................................................1

## FEDERAL REGULATIONS

8 C.F.R. § 241.2(a)(1) ..............................................................................29

8 C.F.R. § 242.2 ......................................................................................11

8 C.F.R. § 287.5(c) ..................................................................................13

8 C.F.R. § 287.5(e)(2) ..............................................................................17

8 C.F.R. § 287.7(a)..................................................................... 8, ***passim***

8 C.F.R. § 287.7(b) ........................................................................... 13, 17

8 C.F.R. § 287.7(b)(1)-(8).........................................................................14

Statement of Interest of the United States – x

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States respectfully submits this brief pursuant to 28 U.S.C. § 517. 28 U.S.C. § 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517 provides a mechanism for the United States to submit its views in cases in which the United States is not a party, *see, e.g.*, *Application of Blondin v. Dubois*, 78 F. Supp. 2d 283, 288 n.4 (S.D.N.Y. 2000), and is not intended to "subject[] it to the general jurisdiction of this Court." *See, e.g.*, *Flatow v. Islamic Republic of Iran*, 305 F.3d 1249, 1252-53 & n.5 (D.C. Cir. 2002).

Pursuant to 28 U.S.C. § 518, counsel for the United States also will be present at the hearing presently scheduled for Tuesday, July 25 at 2:30 p.m. to address, at the Court's convenience, any questions it may have concerning this Statement of Interest. 28 U.S.C. § 518 provides that "[w]hen the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case in a court of the United States in which the United States is interested, or he may direct the Solicitor General or any officer of the Department of Justice to do so."

Statement of Interest of the United States – 1

**INTERESTS OF THE UNITED STATES**

The United States has a substantial interest in, and long history of, working cooperatively with state and local governments on a range of law-enforcement priorities, including violent crime, homeland security, illegal narcotics, human trafficking, and immigration. On the immigration front, the federal government and local governments cooperate by sharing information regarding aliens who are illegally present in the country and have committed serious crimes, rendering such aliens a removal priority.

Yakima County has a policy by which it cooperates with federal immigration enforcement by sharing relevant information concerning a removable criminal alien's release date with U.S. Immigration and Customs Enforcement ("ICE"). As explained by the County, after a criminal alien is booked into the Yakima County Jail, ICE may lodge a request that the County release the alien into ICE's custody upon his or her release from County custody if ICE has reason to believe that the alien is removable from the United States. In Yakima County, ICE does so by serving a Form I-200, Warrant for Arrest of Alien, on the County, who then records the warrant in the County's electronic jail management system. As the County explains, the purpose of noting the warrant in the County's electronic system is to ensure that, when a removable, criminal alien like Plaintiff in this case is released from County custody, he or she is released to ICE's custody.

Statement of Interest of the United States – 2

ICE policy provides that such requests to State or local law enforcement issue only when there is probable cause to believe that the subject is a removable alien, and are accompanied by an administrative warrant issued pursuant to Congressional authority under 8 U.S.C. §§ 1226 or 1231. Where such a request, often referred to as a "detainer,"[1] is made, once State or local law enforcement's basis to detain an alien in custody has lapsed – for example after charges have been dropped, bond has been posted, or a sentence has been served – the alien may be temporarily detained based on the immigration warrant, but for no more than 48 hours. State and local cooperation with detainer requests facilitates the orderly transfer of removable aliens to federal custody when they are released from state or local custody. Absent such cooperation, removable aliens would be released back into the community. Given the population addressed by immigration detainer requests – generally aliens with pending criminal charges or convictions – they are an important tool to promote public safety. When criminal aliens are released from state or local custody, they have the opportunity to reoffend and abscond. There are also many risks and uncertainties involved when apprehending criminal aliens at-large in the community, rather than in a controlled custodial setting. At-large

---

[1] Any reference to a "detainer" or a "request" similar to a detainer referenced in this brief refers only to such detainers or requests issued exclusively by ICE, as in this case.

Statement of Interest of the United States – 3

arrests increase the risk to the officers and agents conducting the arrests, the alien arrested, and members of the public.

These issues involving the sharing of information regarding aliens in State or local criminal custody, and the lawful cooperation by state and local authorities with federal immigration detainer requests, are of deep concern to the United States and present serious public safety and immigration enforcement issues. For those reasons, and at the invitation of the Court, the United States is filing this statement of interest. Specifically, the United States writes to: (1) provide the Court relevant immigration law background concerning federal cooperation with State and local governments in immigration enforcement generally and with Yakima County specifically, and (2) explain why State and local cooperation with federal detainer requests does not violate the Fourth Amendment.

## STATEMENT OF THE CASE

### I.    Statutory, Regulatory, and Procedural Background

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). This broad authority is in part based upon the federal government's power to "establish a[] uniform Rule of Naturalization," *id.* (quoting U.S. Const. art. I, § 8, cl. 4), and in part on the federal government's inherent power as a sovereign to control and conduct relations with foreign governments,

*id.*, and to police its borders and exclude or deport aliens. *See, e.g.*, *Kleindienst v. Mandel*, 408 U.S. 753, 765-66 & n.6 (1972).

Congress codified and consolidated federal power over immigration in the Immigration and Nationality Act ("INA"), 8 U.S.C. 1101 *et seq*. The INA establishes a comprehensive federal statutory regime for the regulation of immigration and naturalization. Among its key provisions, the INA: (1) provides the Secretary of the Department of Homeland Security (DHS)[2] with the authority to enforce the immigration laws and "the power and duty to control and guard the borders and boundaries of the United States against the illegal entry of aliens," *id.* § 1103(a)(1), (5); (2) establishes categories of aliens who are barred from admission to the United States, *id.* § 1182, or may be removed from the United States after their admission, *id.* § 1227; (3) grants immigration officials broad discretion as to their enforcement priorities, *id.* § 1252; (4) instructs the Secretary of Homeland Security to "establish such regulations; prescribe such forms of bond,

---

[2] The INS was part of the Department of Justice until it was abolished and its functions were transferred to the Secretary of Homeland Security. *See* 6 U.S.C. §§ 202, 291, 557; *La. Forestry Ass'n, Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653, 659 (3d Cir. 2014). INA references to the "Attorney General" now generally pertain to the Secretary of Homeland Security, with limited exceptions not relevant to this case. *See id*.

Statement of Interest of the United States – 5

reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority" under the INA, *id*. § 1103(a)(3); and (5) provides specific authority to arrest and detain certain aliens both with and without warrants, *id*. §§ 1226, 1231, 1357.

A.    Federal and State/Local Cooperation Under the INA

The INA contemplates State and local cooperation with federal immigration enforcement, both in formal and informal respects. Formally, Congress has authorized the "DHS," of which ICE is a component agency, to enter into cooperative agreements with States and localities. *See* 8 U.S.C. § 1357(g). Under these agreements, appropriately trained and qualified State and local officers may perform specified functions of a federal immigration officer in relation to the investigation, apprehension, or detention of aliens. 8 U.S.C. § 1357(g)(1)-(9). The state or local officers' activities under these agreements are "subject to the direction and supervision of the [Secretary]." 8 U.S.C. § 1357(g)(3). Separately, Congress has authorized the Secretary of DHS to enter into cooperative agreements with any "State, territory, or political subdivision thereof," in order to "establish acceptable conditions of confinement and detention services" for the housing of removable aliens in ICE's custody. *See* 8 U.S.C. § 1103(a)(11)(B).

On a more informal basis, even in the absence of a written agreement, State and local officers may "communicate with the [Secretary] regarding the

Statement of Interest of the United States – 6

immigration status of any individual," or "otherwise [] cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id*. § 1357(g)(10); *see also* 8 U.S.C. § 1324(c) (authorizing State and local law-enforcement officers to make arrests for violations of the INA's prohibition against smuggling, transporting, or harboring aliens); 8 U.S.C. § 1252c (affirming State and local officers' authority to arrest certain felons who have unlawfully returned to the United States).

Other instances of cooperation include State and local participation in joint task forces with federal officers, providing operational support in executing a warrant, allowing federal immigration officials to gain access to detainees held in State or local facilities and holding an alien in custody so that the federal government can effectuate an arrest, responding to requests for information about when an alien will be released from custody, requesting immigration status information from aliens, and sharing that information with federal officials.[3] *See* DHS, Guidance on State and Local Governments' Assistance in Immigration Enforcement and Related Matters (Sept. 21, 2011) (DHS Guidance), http://www.dhs.gov/xlibrary/assets/guidance-state-local-assistance-immigration-

---

[3] Although not at issue in this case, the INA also recognizes the validity and importance of the reciprocal exchange of immigration-related information between the federal government and states and localities. *See* 8 U.S.C. § 1373.

Statement of Interest of the United States – 7

enforcement.pdf; *see also Arizona*, 567 U.S. at 410, 412-13. These cooperative efforts are critical to facilitating federal processing of the hundreds of thousands of aliens arrested for immigration violations each year.[4]

B.   Federal Immigration Detainers

States may also cooperate with federal immigration enforcement by responding to requests for assistance, most often contained in federal "immigration detainers." An immigration detainer is a document by which DHS provides notice of its intent to assume custody of a removable alien detained in the custody of another law enforcement agency, and seeks state or local cooperation in those efforts. *See* 8 U.S.C. §§ 1226; 1357(d); 8 C.F.R. § 287.7(a) and (d). The Department's current detainer form, the Form I-247A (Immigration Detainer – Notice of Action), sets forth the basis for the agency's determination that it

---

[4] *See, e.g.*, "FY 2016 ICE Immigration Removals," U.S. Immigration and Customs Enforcement, https://www.ice.gov/ removal-statistics/2016#wcm-survey-target-id (last visited July 21, 2017) (noting that DHS apprehended 415,816 aliens in fiscal year 2016); "Infographics 2015," U.S. Dep't of Homeland Sec., https://www.dhs.gov/immigration-statistics/visualization/2015 (last visited July 21, 2017) (462,388 apprehensions in fiscal year 2015).

Statement of Interest of the United States – 8

possesses probable cause to believe that the subject is a removable alien.[5] The detainer serves as a request for other Federal, State, local, or tribal law enforcement agencies to inform DHS of a pending release date for the alien in question, and, in certain circumstances, to hold the alien for up to 48 hours thereafter, so that DHS can assume custody in an orderly manner. 8 C.F.R. § 287.7(a) and (d).

Use of detainers and similar requests in immigration enforcement dates back at least to the 1940s. *See, e.g., Chung Young Chew v. Boyd*, 309 F.2d 857 (9th Cir. 1962); *Rinaldi v. United States*, 484 F. Supp. 916 (S.D.N.Y. 1977); *Slavik v. Miller*, 89 F. Supp. 575 (W.D. Pa.), *aff'd*, 184 F.2d 575 (3d Cir. 1950); *In re Korner*, 50 Cal. App. 2d 407, 408-09 (Cal. Dist. Ct. App. 1942); *Matter of Lehder*, 15 I. & N. Dec. 159 (BIA 1975). In 1986, Congress formally codified the longstanding use of immigration detainers by federal immigration officers, in part,

---

[5] The form also contains a checkbox, not at issue in this case, whereby DHS or a sub-agency determines that an alien is wanted by a State or local entity for prosecution or other similar investigation and then transfers "the alien to [State or local] custody for a proceeding" and in circumstances under which, "upon the completion of the proceeding or investigation . . . DHS intends to resume custody of the alien to complete processing and/or make an admissibility determination." DHS Detainer Form I-247A (Box 2).

for aliens arrested for "violation[s] of any law relating to controlled substances." Pub. L. No. 99-570, § 1751 (codified at 8 U.S.C. § 1357(d)). Notably, through this provision, Congress did not purport to limit the Executive's preexisting, broad detainer authority.[6] *See, e.g., Comm. for Immigrant Rights of Sonoma Cnty. v.*

_____

[6] Rather than define detainers or provide language limiting their contemporary use, Congress instead mandated that an immigration officer promptly determine whether to issue a detainer for an individual who has been arrested for a controlled substance violation by a state, local, or federal law enforcement agency, if the law enforcement agency officer has "reason to believe" that the individual arrested "may not have been lawfully admitted . . . or is not lawfully present in the United States."  This provision was added at the urging of law enforcement officials concerned that the former INS did not always lodge detainers for aliens charged with drug-related offenses. *See, e.g.*, 132 Cong. Rec. H6716-03 (daily ed. Sept. 11, 1986), 1986 WL 790075 (statement of Rep. Ackerman as read by Rep. Smith) (stating that the Act's purpose, among other things, was to address "local law enforcement complaints concerning INS' inability to issue judgment on a suspect's citizenship status fast enough to allow the authorities to continue to detain him"). Although this statutory mandate is limited to arrests for controlled substance violations, it presupposes the existence of DHS's general authority to issue detainers.

Statement of Interest of the United States – 10

*Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1199 (N.D. Cal. 2009) ("[N]othing in the statute . . . purports to limit the issuance of immigration detainers to cases where an alien is arrested . . . for a violation of any law relating to controlled substances."). The INS subsequently issued regulations governing the issuance of immigration detainers.[7] Those regulations codified the agency's existing authority to request other law enforcement agencies to temporarily maintain custody of the alien in certain circumstances in order to permit assumption of custody by the INS. *See* 53 Fed. Reg. 9281, 9283-84 (Mar. 22, 1988).

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress rewrote much of the INA. Through these amendments, Congress codified and reaffirmed legacy INS and now DHS's preexisting authority to arrest and detain aliens unlawfully present in the United States pending a determination of their removability from the United States. 8 U.S.C. § 1226(a) provides that "on a warrant issued by the [Secretary of DHS], an alien may be arrested and detained pending a decision on whether the alien is to be removed

---

[7] INS and DHS have amended those regulations on a number of occasions. *See, e.g.*, Dep't of Justice, INS, Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, Interim Rule, 62 Fed. Reg. 10312, 10392 (Mar. 6, 1997); 8 C.F.R. §§ 242.2, 287.7 (1988).

from the United States."[8] Section 1226(c) further provides that "the [Secretary] shall take into custody any alien who" has committed certain criminal offenses. *See* 8 U.S.C. § 1226(c)(1). These authorities carried forward the authorities to issue detainers in carrying out the Secretary's arrest authority. In addition, 8 U.S.C. § 1357(a)(2), which was not altered by IIRIRA, provides for warrantless arrests of "any alien in the United States" by immigration officers if there is "reason to believe that the alien so arrested is in the United States in violation of [the immigration laws] and is likely to escape before a warrant can be obtained for his arrest."[9]

_____

[8] These provisions recodify longstanding authority to conduct immigration arrests with an administrative warrant. *See Abel v. United States*, 362 U.S. 217, 233 (1960); 8 U.S.C. § 1252(a) (1952); Act of June 25, 1798, c. 58, § 2, 1 Stat. 571; Act of Oct. 19, 1888, c. 1210, 25 Stat. 566; Act of Mar. 3, 1903, c. 1012, § 21, 32 Stat. 1218; Act of Feb. 20, 1907, c. 1134, § 20, 34 Stat. 904; Act of Feb. 5, 1917, c. 29, § 19, 39 Stat. 889; Act of Oct. 16, 1918, c. 186, § 2, 40 Stat. 1012; Act of May 10, 1920, c. 174, 41 Stat. 593; Internal Security Act of 1950, c. 1024, Title I, § 22, 64 Stat. 1008.

[9] *See* 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.5(c) (listing immigration officers with authority to make warrantless arrests); 8 C.F.R. § 287.7(b) (same, for immigration detainers).

Statement of Interest of the United States – 12

Detainers are also essential because immigration law embodies a policy of comity with the states in ensuring criminals serve out their state criminal sentence prior to removal. Congress did not wish to interfere with Federal or State criminal processes, *see, e.g.*, *Duamutef v. INS*, 386 F.3d 172, 179 (2d Cir. 2004), and thus generally "the [Secretary of Homeland Security] may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment," 8 U.S.C. § 1231(a)(4)(A). Accordingly, Congress required the agency to take custody of such aliens after their release from State or local confinement. *Id*. at § 1231(a)(1)(B)(iii) ("removal period begins ... [on] the date the alien is released from detention or confinement"); *see also id.*, § 1226(c)(1) (providing that the Secretary of Homeland Security is to take certain deportable aliens into custody "when the alien is released").

In view of these statutory and historical authorities, DHS's current regulations provide that "[a]ny authorized immigration officer may at any time issue a Form I-247 . . . to any other Federal, State, or local law enforcement agency," 8 C.F.R. § 287.7(a), and identify the personnel who may issue immigration detainers, *id.*, § 287.7(b)(1)-(8).

Earlier this year, ICE updated its detainer policy and DHS then created a new detainer form, Form I-247A. ICE then implemented a comprehensive, new detainer policy, ICE Policy No. 10074.2, effective April 2, 2017. *See* ICE Policy

Statement of Interest of the United States – 13

No. 10074.2: *Issuance of Immigration Detainers by ICE Immigration Officers* (Mar. 24, 2017), https://www.ice.gov/detainer-policy. The new detainer form states that that there is probable cause to believe the subject is a removable alien based upon: (1) a final order of removal against the alien; (2) the pendency of ongoing removal proceedings against the alien; (3) biometric confirmation of the alien's identity and a records match in federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks lawful immigration status or, notwithstanding such status, is removable under Federal immigration law; or (4) the alien's voluntary statements to an immigration officer, or other reliable evidence indicating that the alien either lacks lawful immigration status or, notwithstanding such status, is removable.[10] Moreover, the I-247A may state that DHS is requesting that an alien whom DHS initially apprehended and then transferred to the custody of a state/local entity for a

---

[10] Prior versions of the detainer form, then Form I-247, indicated that DHS had initiated an investigation to determine whether the alien was subject to removal, rather than had probable cause to believe the alien was already subject to removal. *See, e.g., Miranda–Olivares v. Clackamas Cnty.,* No. 3:12–cv–02317–ST, 2014 WL 1414305, at *9-11 (D. Or. Apr. 11, 2014). This language was removed from the Form I-247 in December 2012, and the current detainer form, Form I-247A, also no longer uses the earlier language.

Statement of Interest of the United States – 14

proceeding or investigation be returned to DHS upon completion of that proceeding or investigation.

The I-247A requests that recipient law enforcement agencies (1) notify DHS as early as practicable before a removable alien is released from criminal custody and (2) maintain custody of the alien for a period not to exceed 48 hours beyond the time he would otherwise have been released to allow DHS to assume custody (without any exception for Saturdays, Sundays, and holidays). Furthermore, ICE Policy No. 10074.2 directs that all immigration detainers issued by ICE with respect to removable aliens must now be accompanied by either a Form I-200 (Warrant for Arrest of Alien) or a Form I-205 (Warrant of Removal), signed by an authorized immigration officer. *See* ICE, "Detainer Policy" (Mar. 24, 2017), *available at* https://www.ice.gov/detainer-policy. Thus, ICE detainer requests that are issued to law enforcement agencies are supported by an administrative warrant (and the probable cause determination concerning removability underlying that warrant) that affirmatively authorizes DHS to take that alien into custody. *See* 8 U.S.C. §§ 1226(a), 1231(a).

Like DHS, other federal agencies also use detainers as a way to request that State or local law enforcement agencies temporarily hold individuals they have arrested until federal authorities can take them into custody. Such circumstances range from being absent without leave from the armed forces, *see, e.g.*, *Andrews v.*

*State*, 962 So. 2d 971, 973 (Fla. Dist. Ct. App. 2007) (recounting how a DD Form 553 was issued for the desertion of a military officer and Federal agents enlisted local police in the search of his residence and arrest), to parole and probation violations, *see, e.g.*, *United States v. Chaklader*, 987 F.2d 75, 77 (1st Cir. 1993) (per curiam); *Furrow v. U.S. Bd. of Parole*, 418 F. Supp. 1309, 1312 (D. Me. 1976), to major felony offenses, *see, e.g.*, *United States v. Winter*, 730 F.2d 825, 826 (1st Cir. 1984).

C.    Yakima County's Policy Concerning Cooperation With ICE and Contractual Relationship with ICE

As the County indicates, it has a policy by which it will not detain aliens pursuant to an ICE request to do so beyond the date and time at which they would otherwise be entitled to release on their State charges. *See* ECF 1, Complaint, ¶¶ 26-30. However, as noted, Yakima County has a cooperative policy by which it provides the federal government with the date and time upon which a criminal alien who is otherwise removable from the United States is released from County custody. *See* ECF 22 at ¶ 4; ECF 1, ¶ 31. The County effectuates this policy by relying on federal administrative warrants, specifically in this case a Form I-200, Warrant for Arrest of Alien. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 287.5(e)(2); *see also* 8 C.F.R. § 287.7(b). Upon receipt of a federal administrative warrant, the County records the warrant into its databases, "which then populates the online jail

Statement of Interest of the United States – 16

web portal." ECF 22, ¶ 4. ICE, for its part, is permitted access to County jail facilities, and may serve the Form I-200 directly on removable aliens, while also providing the County the administrative warrant. *See* Ex. 1, Declaration of Michael A. Melendez, ¶¶ 6-7.

"The purpose of recording receipt of the administrative warrant is to ensure that when [a criminal, removable alien] is released from the custody of Yakima County, he is released to the [federal government.]" ECF 22, ¶ 4. The County communicates this information to ICE, including when the alien's state charges have been dismissed, the sentence has been served, or bond has been posted. Ex. 1, ¶ 9. The County's policy concerning federal immigration warrants is consistent with its treatment of "any notice of a warrant or criminal charges issued by another jurisdiction." ECF 22, ¶ 5. "As with the I-200, the purpose of recording notice is to ensure that the inmate is transferred to the appropriate jurisdiction upon release from custody of Yakima County." *Id.*

D.    Mr. Ochoa's State Arrest and Ongoing Detention on State Charges

As the County explains, Plaintiff Ochoa was booked into the Yakima County Jail on May 4, 2017, on Washington State charges of second degree assault and malicious mischief, following a finding by a Yakima County Superior Court Judge that there was probable cause to charge Mr. Ochoa with these offenses. ECF 22 at ¶ 3, ECF 23-1. That same day, ICE lodged an administrative warrant, Form I-

200, with the County, indicating that ICE had probable cause to arrest Mr. Ochoa as a removable criminal alien. *Id.*, ¶ 4; Ex. 1, ¶ 7. ICE also served the warrant on Mr. Ochoa. ECF 1, ¶ 16. As a basis for the arrest warrant, the I-200 indicated that ICE had probable cause to believe that Mr. Ochoa was removable from the United States based on statements made voluntarily by Mr. Ochoa to an immigration officer indicating that the he lacked immigration status or notwithstanding such status is removable from the United States. Ex. 1, ¶¶ 6-7.

In particular, Mr. Ochoa first came to ICE's attention in August, 2008, when ICE officers encounter Mr. Ochoa in the Jack County Jail in Oregon, on state criminal charges of driving under the influence (DUI). *Id.*, ¶ 4. After his conviction on DUI charges, he was released from State custody, taken into ICE custody, and then released by ICE when ICE granted his request to voluntarily return to Mexico. *Id.* ICE next encountered Mr. Ochoa on May 4, 2017 in the Yakima County Jail, where he was detained on his State criminal charges of assault and malicious mischief. *Id.*, ¶ 5. An ICE officer reviewed record of individuals recently admitted to County custody at the jail and determined that Mr. Ochoa had a prior encounter with ICE. *Id.*, ¶ 6. An ICE officer the interviewed Mr. Ochoa, during which Mr. Ochoa identified himself and admitted he was a citizen of Mexico. *Id.*, ¶ 7. After the ICE officer presented that information to a supervisor, the supervisor executed an ICE immigration warrant, Form I-200. *Id.*, ¶ 7.

Statement of Interest of the United States – 18

On May 17, 2017, the Yakima County Superior Court set Mr. Ochoa's bond amount at $50,000. ECF 8, ECF 23-1. According to the County, the fact that Mr. Ochoa is the subject of an ICE administrative warrant does not affect his eligibility for release from County pre-trial custody:[11] "[u]pon posting bail, the Yakima County Department of Corrections will release Mr. Ochoa from its custody." ECF 24 at 2. At present, Mr. Ochoa continues to be held in the Yakima County Jail pursuant to his State law criminal charges. ECF 23, ¶ 6. Unless and until Mr. Ochoa is released from County custody, and is taken into custody by ICE pursuant to his administrative warrant of arrest, he remains in the County's custody under color of State law.

E.    Mr. Ochoa's Custodial Status When and If He Post Bond

In the event Mr. Ochoa actually posts bond on his State charges and is released from County custody, there are generally two possible outcomes. First,

---

[11] Indeed, ICE's policies make clear that a detainer request and accompanying warrant should *not* be construed by law enforcement as preventing an aliens' release on bond. *See* Sample Detainer Form at 1 ("This detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters"), *available at* https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf

Statement of Interest of the United States – 19

pursuant to the County's policy, County officials could notify ICE that an alien subject to an administrative warrant will be released at a specific date and time. Ex. 1, ¶¶ 8-9. ICE officers would then arrive at that time, take Mr. Ochoa into custody, and transport him to a facility used for immigration detention. *Id.*.

A second possibility would be a slight variation on the first. The U.S. Marshals Service ("USMS") and Yakima County have entered into a Detention Services Intergovernmental Agreement (IGA) whereby Yakima has agreed to house federal detainees, including aliens in ICE's custody, in Yakima's facilities. *Id.*, ¶ 10. When an alien is scheduled for release from County custody because State charges have been dismissed, the sentence has been served, or bond has been posted, the County will inform ICE and ICE officers will arrive to take custody. *Id.*, ¶ 9. However, pursuant to the IGA, ICE may then request to house the alien at the County. *Id.*, ¶ 11. In this situation, the alien is subject to ICE custody through the IGA, although he or she is physically detained at the County jail. *See id.*

In either of these scenarios, at no time is an alien actually detained by the County in any legal sense beyond the time the County would be authorized to detain them on State law charges.

### SUMMARY OF THE ARGUMENT

Yakima County cooperates with federal immigration enforcement by notifying ICE concerning the release date of removable aliens in their custody, and

Statement of Interest of the United States – 20

by housing aliens in ICE's custody through an Intergovernmental Agreement (IGA). Such cooperation with federal officials is plainly permitted under the INA and the Constitution, and no party argues otherwise.

Moreover, Yakima's cooperative policies do not violate the Fourth Amendment. The federal requests to the County to inform ICE when an alien is released from County custody are issued under the authority of federal statutes, 8 U.S.C. §§ 1226(a), 1231(a), and 1357, and in all instances where ICE seeks custody of an alien initially apprehended by State or local authorities, include administrative warrants supported by a separate finding of probable cause. Cooperation with such requests does not violate the Fourth Amendment. Even were such immigration detention to commence – which has not yet occurred here – it is beyond dispute that the INA authorizes civil immigration arrests pursuant to administrative warrants issued by immigration officers, and under longstanding Fourth Amendment principles, State and local officers may rely on those administrative warrants to temporarily detain removable aliens at the request, direction, or authorization of the federal government.

## ARGUMENT

## I.    States and Localities May Cooperate with Immigration Enforcement at the Request of the Federal Government

The federal immigration scheme expressly contemplates that states and

localities may assist the federal government with immigration enforcement and makes clear that states can provide the type of assistance that Yakima County has elected to provide by sharing the release dates of aliens in their custody with the federal government. *See Arizona*, 567 U.S. at 410 ("State officials can also assist the Federal Government by responding to requests for information about when an alien will be released from their custody"). Even in the absence of a formal agreement, "any officer or employee of a state or political subdivision of a state" may "communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States," and may otherwise "cooperate with the [Department of Homeland Security] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10). And governing statutes and regulations authorize the Department of Homeland Security to seek assistance from state and local officers by issuing requests that States or localities inform the federal government concerning an alien's release date and transfer such aliens to the federal government. *Id.* § 1226(a), 1357(d); 8 C.F.R. § 287.7(a).

In *Arizona v. United States*, 567 U.S. 387 (2012), the Supreme Court held that the INA "put[s] in place a system in which state officers may not make warrantless arrests of aliens based on possible removability except in specific,

Statement of Interest of the United States – 22

limited circumstances," and that the INA preempted a provision of state law that had "nonetheless authoriz[ed] state and local officers to engage in these enforcement activities as a general matter" without "any *input* from the Federal Government about whether an arrest is warranted in a particular case." 567 U.S. at 408, 410 (emphasis added). The Court was clear, however, that some of the "specific, limited circumstances" in which state detention of aliens for possible removability does *not* conflict with the INA include (1) when the State or locality enters into an agreement with the federal government to assist in the enforcement of the immigration laws, see *id*. at 408-409 (citing 8 U.S.C. § 1357(g)(1)); and (2) *even absent such an agreement*, when the state or locality is "cooperat[ing] with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," *id*. at 409 (quoting 8 U.S.C. § 1357(g)(10)(B). Indeed, the Court explicitly distinguished such cooperation from the State law at issue in *Arizona*, which constituted "unilateral state action" authorizing a "*unilateral* decision of state officers to arrest an alien for being removable *absent any request, approval, or other instruction from the Federal Government*." *Id*. at 410, 413 (emphases added). And the Court was clear that precisely the sort of cooperation Yakima engages in by sharing release date information with ICE is permitted under federal law. *Id*. at 410 (listing "allow[ing] federal immigration officials to gain access to detainees held in state facilities" and

Statement of Interest of the United States – 23

"responding to requests for information about when an alien will be released from their custody" as examples of State cooperation with federal immigration enforcement that is not preempted by the INA).

Under *Arizona*, state or local cooperation with a request for information concerning an alien's release date or to transfer custody of an alien to the federal government following completion of an alien's State sentence or release from State custody is consistent with the INA because it involves this permitted kind of cooperation, rather than "unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." *Id*. Indeed, a detainer is itself a "request . . . from the Federal Government" to a State or locality to assist the federal government's efforts to take a particular alien into custody, *id*., by either informing the federal government about an alien's impending release, or, in some circumstances, temporarily holding the alien for a short time so that the federal government can effectuate custody in an orderly manner. *See also* Guidance on State and Local Governments' Assistance in Immigration Enforcement and Related Matters at 7-8, 13-14, *available at* https://www.dhs.gov/sites/default/files/publications/guidance-state-local-assistance-immigration-enforcement.pdf. The ICE request, made through either a detainer or the administrative warrant, initiates and cabins any State or local cooperation through "the direction and guidance of federal officials charged

with implementing and enforcing the immigration laws," such that local assistance is "rendered within any parameters set by DHS [and] DHS can exercise control over enforcement and has the flexibility to respond to changing considerations." *See id.* 8. Furthermore, under ICE policy, every request is accompanied by a warrant, and the INA thus plainly authorizes the federal government to effectuate the arrest itself. *See id.*; 8 U.S.C. 1226(a), 1231(a).

Put another way, because ICE exercises its enforcement discretion in deciding whether to issue a detainer request and whether to issue the accompanying warrant, State and local officers who choose to comply with that request are, by definition, conforming their assistance "to federal priorities and direction and [therefore] conform to federal discretion," whatever federal priorities may entail. *See id.* at 9; *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 465-67 (4th Cir. 2013) (recognizing that local police may detain and transport an alien after express direction of federal officials); *Ovando-Garzo*, 752 F.3d at 1164-65 ("state official [may] cooperate with the Attorney General in identifying, apprehending, and detaining any individual unlawfully present in the United States" so long as the actions are "not unilateral"); *see also United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010) (holding that a state officer was authorized under Section 1357(g)(10)(B) to detain an alien at DHS's behest until DHS could take him into custody the following day); *United States v. Soriano-*

*Jarquin*, 492 F.3d 495 (4th Cir. 2007) (finding temporary detention of alien by local officer lawful where the police officer detained the passengers at ICE's express direction).[12]

## II.    It is Not Unconstitutional to Cooperate With the Federal Government's Detainer Requests, Which are Accompanied by Warrants Based on Probable Cause

The crux of Plaintiff's Fourth Amendment claim appears to be his mistaken belief that he is currently being detained in Yakima County custody because of his

---

[12] Any reliance on cases addressing *unilateral* state or local enforcement of civil immigration law, absent actual federal direction, supervision, or authorization, is misplaced. *See Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012) (affirming preliminary injunction prohibiting county sheriff from unilaterally making civil immigration arrests as ICE had revoked his department's 287(g) agreement with ICE permitting him to do so); *Buquer v. City of Indianapolis*, No. 1:11-cv-00708-SEB-MJD, 2013 WL 1332158, at *10-11 (S.D. Ind. Mar. 28, 2013) (finding State law preempted where it provided state and local officers "unilateral discretion" to make immigration arrests). But these authorities are irrelevant where, as here, any arrest is made following a specific "request, approval, or other instruction from the Federal Government" in the form of the immigration detainer request. *Arizona*, 567 U.S. at 410.

Statement of Interest of the United States – 26

federal administrative warrant and/or because the bail bondsman he contacted will not post bail on his behalf because of the existence of the arrest warrant. ECF 6 at 1-2. But it is well-established that when an alien is detained under color of State law – as Plaintiff is – the fact that the federal government has lodged a request to be informed of the alien's release date does not create a new seizure for Fourth Amendment purposes where the alien is not being detained any longer that he or she otherwise would be on State charges. *See, e.g.*, *Morales v. Chadbourne*, 793 F.3d 208, 217-18 (1st Cir. 2015) (finding Fourth Amendment seizure if alien is "kept in custody for a *new* purpose *after* she was entitled to release") (emphasis added); *U.S. v. Juarez-Velasquez*, 763 F.3d 430, 436 (5th Cir. 5014) ("immigration detainer was simply an administrative mechanism that ensured that upon the completion of his state criminal matter, Juarez would be transferred to federal custody to face any immigration consequences that accrued as a result of his illegal reentry" and "the state charges were the impetus for the entire duration of Juarez's pretrial detention"); *Cruz v. Kauai County*, 279 F.3d 1064, 1066, 1068 (9th Cir. 2002) (finding individual seized for Fourth Amendment purposes when they are released from state custody only to be re-arrested and re-incarcerated"); *Miranda-Olivares v. Clackamas County*, 2014 U.S. Dist. LEXIS 50340, *27-28 (D. Or. April 11, 2014) (finding detainer as issued under policy in existence at the time is a new seizure if it prolongs detention beyond when would otherwise be released

Statement of Interest of the United States – 27

from State custody); *see also Garcia v. Taylor*, 40 F.3d 299, 304 (9th Cir. 1994) (holding that individual already in state custody on other grounds is not "in custody" for habeas purposes based on the lodging of a new detainer request).

Moreover, if and when Mr. Ochoa is actually released from County custody following the posting of bond, he may immediately be taken back into custody by ICE based on his administrative warrant of arrest, *see* 8 U.S.C. § 1226(a), a proposition Plaintiff does not and cannot dispute. And, pursuant to the IGA with Yakima County, ICE may house any alien in its custody in the County's facilities, and may, upon Mr. Ochoa's release on bond on his State charges, take him into ICE custody but have him held in the County's facilities under ICE's, rather than the County's, authority. *See* Ex. 1, ¶¶ 10-11. Any new seizure of Plaintiff based on his administrative warrant following his release from State pretrial custody would be fully compliant with the Fourth Amendment. *See infra*; *see also, e.g.*, *Lopez v. INS*, 758 F.2d 1390, 1393 (10th Cir. 1985) (aliens "may be arrested by administrative warrant issued without an order of a magistrate"); *Moreno v. Napolitano*, 213 F. Supp. 3d 99, 1005 (N.D. Ill. 2016) (citing Section 1226(a) provision that an alien may be detained "pursuant to 'a warrant issued by the Attorney General'"); *Miranda–Olivares*, 2014 WL 1414305, at \*9–11 (D. Or. Apr. 11, 2014) (noting probable cause was lacking for civil detention in part because plaintiff "was not subject to a warrant for arrest or order of removal or deportation

by ICE").

Even if for purposes of reviewing Plaintiff's *merits* claim that the administrative warrant lodged with the County by ICE could be subject to challenge now as limiting the County's authority to release him or as presently or in the future causing a new seizure by prolonging Plaintiff's custody beyond the time he would otherwise be released if and when he posts bond, that seizure would be entirely consistent with the Fourth Amendment. Under well-established constitutional principles that are not in dispute, local officials are entitled to give effect to administrative immigration warrants at ICE's direction or authorization and in reliance on ICE's finding of probable cause that an alien in State or local custody is removable from the United States. Accordingly, compliance with federal detainer requests and/or ICE administrative warrants that are issued under ICE's current policy is fully consistent with the Fourth Amendment.

## A.    Complying with detainers issued pursuant to the ICE's detainer policies is fully consistent with the Fourth Amendment.

As Plaintiff must concede, ICE has issued a policy under which it only issues detainer requests concerning an alien's release from State or local custody when there is probable cause to arrest an individual on the basis that he is a removable alien, and the request is accompanied by an administrative warrant issued pursuant to 8 U.S.C. § 1226 or, if a removal order is final, under 8 U.S.C. §

1231(a); 8 C.F.R. § 241.2(a)(1). *See* ICE Policy No. 10074.2. Each request issued by ICE to either inform ICE of an alien's release date or to temporarily hold the alien for pickup issued by ICE, coupled with the warrant, explains for the receiving State or local officer the identity of the individual at ICE who made the probable cause determination, the information that formed the basis for that determination, and when that determination was made. These probable cause determinations are generally straightforward. If an alien is present in the United States, ICE can often readily determine whether he or she was lawfully admitted or paroled into the United States following inspection by an immigration officer, such that the alien is in fact lawfully present in the United States. *See* 8 U.S.C. §§ 1101(a)(13)(A), 1182(d)(5). This would, for instance, allow ICE to determine whether the alien has overstayed or otherwise violated the terms and conditions of his authorized period of admission or parole, which would demonstrate probable cause.

That these temporary detentions are premised on administrative warrants, rather than warrants issued by an Article III or magistrate judge is of no moment. As Plaintiffs must concede, it is well-established that immigration arrests may be premised on *civil*, administrative warrants. The Supreme Court has long held that removal proceedings are civil, rather than criminal in nature, and "various protections that apply in the context of a criminal trial," including various Fourth Amendment protections, "do not apply in a deportation hearing." *Immigration &*

Statement of Interest of the United States – 30

*Naturalization Servs. v. Lopez–Mendoza*, 468 U.S. 1032, 1050–51 (1984); *see also Carlson v. Landon*, 342 U.S. 524, 537 (1952) ("Deportation is not a criminal proceeding and has never been held to be punishment. No jury sits. No judicial review is guaranteed by the Constitution."). In fact, the entirety of immigration proceedings, from initial arrests initiating those proceedings, *see* 8 U.S.C. § 1226(a), to bond hearings, *see id.*, to challenges to mandatory detention, *see Demore v. Kim*, 538 U.S. 510, 514 (2003), to the ultimate decision as to whether an individual is removable, *see* 8 U.S.C. § 1229a, are conducted by administrative officials within the Executive Branch, and are only subject to review before an Article III judge if the alien seeks judicial review of a final order of removal. *See* 8 U.S.C. § 1252(a). *See generally J. E. F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016). And unlike individuals in other civil contexts, aliens have a weaker liberty interest with respect to immigration detention, because their presence in the county is due to and conditioned on federal immigration law. *See, e.g.*, *Demore*, 538 U.S. at 523 ("detention during deportation proceedings as a constitutionally valid aspect of the deportation process").[13]

That the Fourth Amendment's requirements in the *criminal* context may not apply to the initiation and conduct of these *civil* immigration proceedings is thus

---

[13] Of course, it is a violation of federal *criminal* law for an alien to enter or re-enter the United States without authorization.  8 U.S.C. §§ 1325, 1326.

Statement of Interest of the United States – 31

not a novel concept.[14] *See Gerstein v. Pugh*, 420 U.S. 103, 125, n.27 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system . . . ."); *De La Paz v. Coy*, 786 F.3d 367, 372 (5th Cir. 2015) (rejecting an attempt to "equate civil immigration enforcement actions with federal criminal law enforcement"); *Rhoden v. United States*, 55 F.3d 428, 432 n.7 (9th Cir. 1995) (per curiam) (noting how civil immigration proceedings "involve a distinct set of considerations and require different administrative procedures" than criminal proceedings); *cf. Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320 (1978) (noting, in the context of administrative searches, how "[p]robable cause in the criminal law sense is not required"). Accordingly, "it is not unconstitutional under the Fourth Amendment for the Legislature to delegate a probable cause determination to an executive officer, such as an ICE agent, rather than to an immigration, magistrate, or federal district court judge." *Gonzalez v. ICE*, No. 13-4416, 2017 WL 2559616, *10 (C.D. Cal. June 12, 2017) (collecting cases).

Moreover, there is no dispute that administrative warrants issued pursuant to express statutory authorization and supported by probable cause are sufficient to

---

[14] This is not to say that the Fourth Amendment is limited to criminal proceedings, *see, e.g.*, *Soldal v. Cook Cnty.*, 506 U.S. 56, 69 (1992), but only to note that its application in civil proceedings will vary from criminal proceedings and even other types of civil proceedings.

Statement of Interest of the United States – 32

justify an immigration arrest. As the Supreme Court has observed at length, given the civil nature of these immigration proceedings, there is "overwhelming historical legislative recognition of the propriety of administrative arrest[s] for deportable aliens." *Abel v. United States*, 362 U.S. 217, 233 (1960) (noting "impressive historical evidence of acceptance of the validity of the statutes providing for administrative deportation arrest from almost the beginning of the Nation" and concluding that "[s]tatutes authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time."); *see, e.g.*, *Lopez*, 758 F.2d 1390, 1393 (10th Cir. 1985) (aliens "may be arrested by administrative warrant issued without an order of a magistrate"); *Moreno*, 213 F. Supp. 3d 99, 1005 (N.D. Ill. 2016) (citing Section 1226(a) provision that an alien may be detained "pursuant to 'a warrant issued by the Attorney General'");[15] *Miranda–Olivares*, 2014 WL 1414305, at *9–11 (D. Or. Apr. 11, 2014) (noting probable cause was lacking for civil detention in part because plaintiff "was not

---

[15] The *Moreno* Court ultimately issued an order endorsing the legality of ICE's reliance on administrative warrants issued "in accordance with the applicable statute and regulations" as a basis for temporary detention of aliens. Order, ECF No. 239, *Moreno v. Napolitano*, No. 11-5452 (N.D. Ill. Nov. 28. 2016). Notably, the Court later rejected a request from Plaintiffs to limit that holding to criminal warrants issued by a judge. *See id.*, ECF No. 254.

Statement of Interest of the United States – 33

subject to a warrant for arrest or order of removal or deportation by ICE").

Although the County relies on the administrative warrants issued by ICE, Plaintiff relies on cases that predate ICE's current policy and involved detainer requests that would be inconsistent with the current policy. The current policy provides that "all detainers issued by ICE must be accompanied by" a warrant for arrest or warrant of removal/deportation. Policy Number 10074.2: Issuance of Immigration Detainers by ICE Immigration Officers, ¶ 2.4. It further provides that detainers may not be "based upon the initiation of an investigation" and "may not establish probable cause of alienage and removability, for purposes of detainer issuance, solely based on evidence of foreign birth and the absence of records in available databases." *Id.* ¶ 2.6. And the detainer form specifies, in bolded, underlined, capital letters, that the state should only "**[m]aintain custody** of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody." Immigration Detainer – Notice of Action, DHS Form I-247A (emphasis in original).

Cases involving detainers issued by ICE that would have violated one or more of these requirements and arose under prior policies not requiring ICE to serve an administrative warrant are therefore inapposite. *See Morales v. Chadbourne*, No. 12-301-M-LDA, 2017 WL 354292 (D.R.I. Jan. 24, 2017) (detainer stating that "investigation has been initiated" based on failure to match

Statement of Interest of the United States – 34

individual in database); *Miranda-Olivares v. Clackamas County*, No. 12-cv-2317-ST, 2014 WL 1414305, at *1 (D. Or. Apr. 11, 2014) (detainer based on initiation of investigation that "was not accompanied by an arrest warrant"); *Moreno*, 213 F. Supp. 3d at 105 (N.D. Ill. 2016) (challenge to detainer without a warrant); *Orellana v. Nobles County*, 15-3852, 2017 WL 72397, at *8 (D. Minn. Jan. 6, 2017) (holding that a *warrantless* arrest, unsupported by an administrative warrant, must be supported by probable cause that an alien is both subject to removal *and* a flight risk).

### B.    State and local officers may rely on the probable cause determinations made by ICE contained in its administrative warrants

It is well-established that Local officers are entitled to rely on ICE's findings of probable cause as articulated in the administrative warrant. Where one officer obtains an arrest warrant based on probable cause, other officers may carry out the arrest even if they are "unaware of the specific facts that established probable cause." *United States v. Hensley*, 469 U.S. 221, 231 (1985). "[W]here law enforcement authorities are cooperating . . . the knowledge of one is presumed shared by all." *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983). As the Ninth Circuit has observed, "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-

examine their fellow officers about the foundation for the transmitted information."
*United States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976) (cited in *Hensley*).
Thus, the knowledge of one officer may be presumed to be imputed to another
"regardless of whether any information giving rise to probable cause was actually
communicated to" the officer conducting the stop, search, or arrest." *United States
v. Ramirez*, 473 F.3d 1026, 1032-33 (9th Cir. 2007).[16]

The collective knowledge rule "governs whether the communication is from
a superior or fellow officer within the department, between different agencies or
agencies at different levels within a state, between officials in different states, and

---

[16] Accordingly, this doctrine applies regardless of whether law enforcement
agencies are engaged in a formal, joint investigation. *See Hensley*, 469 U.S. at 231.
Indeed, the rationale behind the rule was that an agency lacking any information
about a case beyond a "wanted flyer" should be able to rely upon the information
in the flyer from another jurisdiction. *See id.* at 231. The rule has regularly been
applied by courts in scenarios involving a specialized federal investigation in
which state officers are uninvolved but yet are asked for assistance by federal
officers in detaining identified suspects. *See, e.g.*, *United States v. Powell*, 732
F.3d 361, 369-70 (5th Cir. 2013); *Ramirez*, 473 F.3d at 1037; *United States v.
Celio*, 945 F.2d 180, 183 (7th Cir. 1991); *United States v. Capelton*, 350 F.3d 231,
239-40 (1st Cir. 2003).

Statement of Interest of the United States – 36

also between federal and state or local authorities." 3 Wayne R. LaFave, SEARCH AND SEIZURE, § 3.5(b) (2016). Thus, courts have provided no reason not to extend the "collective knowledge" or "fellow officer" rule to the immigration context and violations of civil law. For example, in *Liu v. Phillips*, the First Circuit upheld qualified immunity for a local officer who arrested an alien at the direction of an INS officer for a suspected violation of the immigration laws. 234 F.3d 55, 57-58 (1st Cir. 2000) (Boudin, J.); *Garcia v. Speldrich*, No. 13–CV–3182, 2014 WL 3864493, at *8-9 (D. Minn. Aug. 6, 2014) (holding that qualified immunity applied for two state conservation officers who detained several individuals based on information provided by ICE officers who had interrogated the individuals); *People v Xirum*, 993 N.Y.S.2d 627, 630, 631 (N.Y. Sup. Ct. 2014) ("the [state] had the right to rely upon [a detainer issued by] the very Federal law enforcement agency charged under the law with 'the identification, apprehension, and removal of illegal aliens from the United States'") (quoting *Arizona*, 132 S. Ct. at 2500); *Smith v. State*, 719 So. 2d 1018, 1022 (Fla. Dist. Ct. App. 1998) (upholding stop by local police based on the reasonable suspicion provided by immigration officer that defendant present illegally); *cf. Miranda–Olivares*, 2014 WL 1414305, at *9–11 (observing local law enforcement lacked probable cause for civil detention in part because plaintiff "was not subject to a warrant for arrest or order of removal or deportation by ICE").

Statement of Interest of the United States – 37

1
2

**C.     States and localities cooperating with Federal immigration enforcement efforts may temporarily detain aliens at the request or direction of the Federal Government based solely on probable cause of a civil immigration violation**

3
4
5
6

Any suggestion that State and local law enforcement officers may only make

7

criminal, as opposed to civil, arrests based on probable cause to believe that the

8
9

subject is a removable alien is without merit. The same detention of the same alien

10

pursuant to the same warrant is no less reasonable when the custodian is a State or

11

local officer, rather than the federal government itself, and the State or local officer

12
13

already has the individual in custody and is merely continuing to hold him or her

14

temporarily under the direction, supervision, or authorization of the federal

15

government so that it can effectuate an arrest in a safe and orderly manner.

16
17

The "impressive historical evidence" of the validity of civil, administrative

18

warrants as the basis for federal immigration enforcement identified by the

19
20

Supreme Court in *Abel*, 362 U.S. at 233, and is further supported by both historic

21

and contemporary understandings of the scope of "probable cause" as used in the

22
23

Fourth Amendment. Probable cause to arrest under the Fourth Amendment,

24

whether through a warrant or without one, may be premised on suspected

25

violations of *civil*, as opposed to criminal, law. As the Eleventh Circuit recently

26
27

explained, the "Fourth Amendment does not require warrants to be based on

28

probable cause of a crime, as opposed to a civil offense." *United States v. Phillips*,

834 F.3d 1176, 1181 (11th Cir. 2016). Indeed, during the founding era, "probable cause" meant a belief "made under circumstances which warrant suspicion," without distinguishing between criminal or civil offenses. *See Locke v. United States*, 11 U.S. (7 Cranch) 339, 348 (1813) (Marshall, C.J.); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 328-32, 351-54 (2001) (noting common law authority constables had to arrest suspects regardless of whether such offenses were "jailable"). The Supreme Court has never suggested that arrests do not satisfy the Fourth Amendment if they are not premised on probable cause of a *crime*. Rather, recent Supreme Court cases reinforce the notion that arrests may be premised on probable cause of a legal violation, whether civil or criminal. *See, e.g.*, *Arkansas v. Sullivan*, 532 U.S. 769 (2001) (per curiam) (upholding an arrest for speeding, a "violation" punishable by only a fine under state law); *Soldal*, 506 U.S. at 69 (holding that civil seizure of property governed by normal Fourth Amendment standards); *cf. Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (describing material witness warrants and explaining warrants may be issued based on probable cause of something other than a "violation of law"); *United States v. Comstock*, 560 U.S. 126, 130-31 (2010) (upholding federal civil commitment statute for mentally ill or sexually dangerous persons).

Applying these authorities, courts of appeals have concluded that "arrests for violations of purely civil laws are common enough . . . ." *Thomas v. City of Peoria*,

Statement of Interest of the United States – 39

580 F.3d 633, 638 (7th Cir. 2009) (upholding arrest for civil contempt, for alleged failure to pay parking tickets); *see also United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010) (upholding arrest for possession of one ounce or less of marijuana, an "infraction" under State law); *United States v. Burtton*, 599 F.3d 823, 830 (8th Cir.2010) (upholding arrest for violation of State's "open container" law, an "infraction"). So, too, are arrests for noncriminal conduct that is not even a civil violation at all. *See, e.g.*, *Bruce v. Guernsey*, 777 F.3d 872 (7th Cir.2015) (upholding noncriminal arrest of mentally ill individual based on probable cause that individual was danger to self or others); *United States v. Gilmore*, 776 F.3d 765, 77-71 (10th Cir. 2015) (upholding noncriminal arrest of intoxicated person because of probable cause to believe he was a threat to himself or others); *United States v. Timms*, 664 F.3d 436, 452-53 (4th Cir. 2012) (addressing federal statute permitting civil commitment of sexually dangerous persons upon certification of executive officer); *cf. United States v. Duka*, 671 F.3d 329 (3d Cir.2011) (upholding Foreign Intelligence and Surveillance Act "significant purpose" test as basis for surveillance as reasonable under the Fourth Amendment, notwithstanding absence of any requirement that government show "probable cause of a crime being committed").

Plaintiff ignores these authorities, and instead appears to suggest that whether a civil immigration arrest supported by an immigration detainer and/or an

Statement of Interest of the United States – 40

administrative warrant violates the Fourth Amendment turns on whether Federal *or* State and local authorities are effectuating the arrest. But this argument assumes that inter-sovereign cooperation is only permitted based on allegations of criminality.[17] That assumption is at odds with the extensive case law addressing cooperation between sovereigns, both State-to-State and Federal-State, whereby

---

[17] *Gonzales v. Peoria*, 722 F.2d 468, 474 (9th Cir. 1983), *overruled on other grounds by Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999), which held that State officers have *inherent* authority to make *criminal* immigration arrests absent state authorization to make such arrests, is not to the contrary. Whatever the ongoing validity of that decision, the Supreme Court in *Arizona* made clear that as a general matter, with or without positive State law directly on point, individual state and local officers may "cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States" pursuant to 8 U. S. C. § 1357(g)(10)(B), so long as it is done so pursuant to a "request, approval, or other instruction from the Federal Government." 567 U.S. at 410; *accord Santos*, 725 F.3d 451, 465-67 (4th Cir. 2013) ("*absent express direction or authorization by federal statute or federal officials*, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law) (emphasis added).

Statement of Interest of the United States – 41

one sovereign temporarily detains an individual based on a *civil* infraction committed by the individual against the other sovereign. Indeed, temporary *civil* detentions effectuated by one sovereign on behalf of another routinely occur in our system of dual sovereignty. *See, e.g.*, *United States v. Cardona*, 903 F.2d 60, (1st Cir. 1990) (parole violator warrant issued by New York, arrest effectuated by local police officers in Rhode Island); *Chavez v. City of Petaluma*, No. 14-CV-5038, 2015 WL 6152479, at *6, *11 (N.D. Cal. Oct. 20, 2015) (dismissing a claim for allegedly improper warrantless arrest and detention where parole officers placed parole hold on Plaintiff, city policy effectuated warrantless arrest, and County detained plaintiff following arrest); *Furrow*, 418 F. Supp. 1309, 1312 (D. Me. 1976) (similar, warrant issued by federal government, effectuated by Maine); *Andrews v. State*, 962 So. 2d 971, 973 (Fla. Dist. Ct. App. 2007) (recounting how a DD Form 553 was issued for the desertion of a military officer and Federal agents enlisted local police in the search of his residence and arrest); *accord United States v. Lucas*, 499 F.3d 769, 776-79 (8th Cir. 2007) (administrative arrest warrant issued by State executive official for apprehension of prison escapee, executed by city police officer); *Henderson v. Simms*, 223 F.3d 267 (4th Cir. 2000) (so-called administrative "retake" warrant issued by State prison officials directed at prisoners released prematurely, effectuated by police officers); *see also Gardner v. Cal. Highway Patrol*, No. 2:14-CV-2730, 2015 WL 4456191, at *16 (E.D. Cal.

Statement of Interest of the United States – 42

July 20, 2015) (explaining that county could reasonably rely on a facially valid probable-cause declaration from a highway patrol officer to detain the plaintiff in jail).

The Supreme Court's decision in *Virginia v. Moore*, 553 U.S. 164 (2008), further supports the constitutionality under the Fourth Amendment of State or local seizures – assuming a new seizure occurs – made at the direction or request of the federal government. In *Moore*, local police officers in Virginia stopped a car driven by defendant, who was not in possession of a valid driver's license. Under State law, that was not an arrestable offense and instead triggered a citation, but the officers nonetheless arrested him, searched him, and found crack cocaine. *Id.* at 167. The Virginia Supreme Court held that because under State law the police should have issued the defendant a citation, and the Fourth Amendment does not permit searches incident to citations, the warrantless arrest violated the Fourth Amendment. The Supreme Court reversed, rejecting the view that the state-law limitation controlled the Fourth Amendment analysis.

The Court explained that, "whether or not a search is reasonable within the meaning of the Fourth Amendment, . . . has never depended on the law of the particular State in which the search occurs," and "state law [does] not alter the content of the Fourth Amendment." *Id.* at 172. Indeed, as the Court observed, "the Fourth Amendment's meaning did not change with local law enforcement

Statement of Interest of the United States – 43

practices—even practices set by rule. While those practices 'vary from place to place and from time to time,' Fourth Amendment protections are not 'so variable' and cannot 'be made to turn upon such trivialities." *Id.* (quoting *Whren v. United States*, 517 U.S. 806, 815 (1996)). Rather, "when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same," *id.* at 173, and to hold otherwise would cause Fourth Amendment "protections [to] vary if federal officers were not subject to the same statutory constraints as state officers." *Id.* at 176. Thus, "[i]t would be strange to construe a constitutional provision that did not apply to the States at all when it was adopted to now restrict state officers *more* than federal officers . . . ." *Id.* (emphasis added); *see United States v. Brobst*, 558 F.3d 982, 991 (9th Cir. 2009) (similar). To hold otherwise, the Court found, would conflict with its oft-repeated observation concerning the importance of "readily administrable rules" in determining reasonableness under the Fourth Amendment. *Id.* at 175 (citing *Atwater*, 532 U.S. at 347); *see Dunaway v. New York*, 442 U.S. 200, 213 (1979) ("A single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.").

The reasoning of *Moore* turned in part on the fact that the local police officers in that case lacked authority under Virginia law to make an arrest for that

Statement of Interest of the United States – 44

offense. But the facts presented here do not in fact involve an absence of authority as in *Moore*, and there is no dispute whether controlling law authorizes continued detention: federal law affirmatively authorities the federal government to arrest and detain the alien based on an administrative warrant backed by probable cause, 8 U.S.C. §§ 1226(a), 1231(a); the federal government has, through the detainer request, affirmatively asked local law enforcement to continue detaining the individual so that the federal government can effectuate the arrest in an orderly manner; the detention is not warrantless, but instead the detainer request is accompanied by a warrant based on a determination of probable cause; and the IGA between the County and USMS allows ICE to detain removable aliens in its custody in County facilities the moment they become subject to ICE custody. *See* Ex. 1, ¶¶ 10-11.[18] And although civil immigration violations are "jailable," in that

---

[18] Under *Moore*, the fact that a facially-valid arrest warrant exists supplies all the probable cause that is necessary under the Fourth Amendment. *See. Johnson v. Phillips*, 664 F.3d 232, 238 (10th Cir. 2008) (applying *Moore*, and holding that local police officer "lacked authority under state law to make an arrest does not establish that his conduct violated the Fourth Amendment" and that "[t]he outstanding warrant gave [the officer] probable cause to arrest [plaintiff], and that probable cause satisfied the Fourth Amendment"); *cf. Phillips*, 834 F.3d at 1182 ("arrest based on a valid warrant is per se reasonable").

Statement of Interest of the United States – 45

DHS may take any alien suspected to be removable into physical custody pending a determination on removability, *see* 8 U.S.C. §§ 1226(a), (c); 1231(a), "the Fourth Amendment does not forbid an arrest for a 'nonjailable' offense." *Thomas*, 580 F.3d at 637 (citing *Atwater*, 532 U.S. at 351-54); *accord Burtton*, 599 F.3d at 830. Rather, what matters is whether there is probable cause to believe the legal violation has occurred in the first place. If there is, then there can be no Fourth Amendment violation, regardless of whether the arresting officer is a Federal or State or local officer. *See Moore*, 553 U.S. at 176. Having reasonableness turn on what sovereign employs the arresting officer such that the Fourth Amendment would "now restrict state officers more than federal officers," is precisely the sort of haphazard, "variable . . . trivialit[y]" the Supreme Court routinely rejects. *See, e.g.*, *Moore*, 553 at 172, 176.

In short, even assuming a new seizure of Plaintiff has occurred or will occur at some point in the future in this case, a federal officer does not violate the Fourth Amendment by relying on a civil immigration warrant to arrest and detain a removable alien. A State or local officer similarly does not violate the Fourth Amendment by temporarily detaining the same removable alien at the request of the federal government, based on the *identical* administrative arrest warrant and determination of probable cause. *See* 553 U.S. at 176. Of course, no party seriously contends that civil, administrative arrest warrants issued pursuant to 8 U.S.C. §§

Statement of Interest of the United States – 46

1226 and 1231 somehow violate the Fourth Amendment. But that is precisely the point: the fact of *cooperation* between two separate sovereigns in reliance on the same set of facts and the same administrative warrant cannot alter the analysis. If federal immigration warrants do not violate the Fourth Amendment (which they do not, *see supra*), and Federal officers do not violate the Fourth Amendment when effectuating arrests in reliance on federal immigration warrants, then State or local officers' reliance on those warrants in making identical arrests similarly cannot violate the Fourth Amendment. *See* 553 U.S. at 176.

## CONCLUSION

For these reasons, the United States respectfully asks that this Court reject Plaintiff's request that the Court find inability to post bond is somehow caused by an administrative warrant that violates the Fourth Amendment and conclude that to the extent Plaintiff's administrative warrant at any point during his custody up until now or in the future evolves into a new seizure, that that new seizure is fully consonant with the Fourth Amendment.

//

| | |
|---|---|
| 1 | Dated: July 21, 2017 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Dated: July 21, 2017                  Respectfully Submitted,

CHAD A. READLER
*Acting Asst. Attorney Gen.*

WILLIAM C. PEACHEY
*Director*, Office of Immigration Litigation
District Court Section

/s/ Erez Reuveni
EREZ REUVENI
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division,
450 5th Street NW
Washington, D.C. 20530
Tel: 202-307-4293
erez.r.reuveni@usdoj.gov

*Counsel for United States*

Statement of Interest of the United States – 48

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I certify that on July 21, 2017, I electronically filed the foregoing motion with the Clerk of Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to the attorneys of record for all parties.

/s/ Erez Reuveni
EREZ REUVENI
Senior Litigation Counsel
U.S. Department of Justice

Statement of Interest of the United States – 49