1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 31, 2017

SEAN F. McAVOY, CLERK

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

5

6

7

8

9

10

11

| | |
|---|---|
| ANTONIO SANCHEZ OCHOA,<br><br>                    Plaintiff,<br><br>        v.<br><br>ED W. CAMPBELL, Director of the Yakima County Department of Corrections; SCOTT HIMES, Chief of the Yakima County Department of Corrections; YAKIMA COUNTY,<br><br>                    Defendants. | No.   1:17-CV-03124-SMJ<br><br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |

12

## I.    INTRODUCTION

13

14

15

16

17

18

19

20

Plaintiff Antonio Sanchez Ochoa is currently in Yakima County Department of Corrections' (DOC) custody on state criminal charges. He alleges that he is unable to post bail on his state criminal charges because Defendants Director Ed Campbell, Chief Scott Himes, and Yakima County (collectively "Defendants") placed an immigration hold on him. Sanchez Ochoa alleges that the immigration hold has resulted in continued detention without probable cause in violation of the Fourth Amendment to the United States Constitution, and he seeks a temporary restraining order from this Court directing Defendants to remove the immigration

1  hold so he can post bail on his state criminal charges and be released from DOC's

2  custody. Defendants oppose the request.

3      The Court has reviewed the entire docket in this matter, the applicable law,

4  and heard argument from the parties and the United States on July 25, 2017. For the

5  reasons detailed below, the Court concludes that Defendants' placement of a hold

6  on Sanchez Ochoa caused a seizure for Fourth Amendment purposes. Defendants

7  have referred to the hold as an "ICE hold" and an "immigration hold." An

8  immigration hold by any other name is still an immigration hold. To place the

9  immigration hold, Defendants impermissibly relied on an administrative warrant

10  issued by immigration authorities. Further, the Court concludes that Sanchez Ochoa

11  is likely to succeed on the merits of his Fourth Amendment claim and meets the

12  standard for obtaining the requested relief. At the hearing, the Court granted

13  Sanchez Ochoa's motion. This Order memorializes, supplements, and clarifies the

14  Court's oral ruling.

15  **II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

16      On July 17, 2017, Plaintiff Antonio Sanchez Ochoa filed an unverified

17  complaint against Ed W. Campbell, Director of the Yakima County Department of

18  Corrections (DOC), Scott Himes, Chief of the DOC, and Yakima County pursuant

19  to 42 U.S.C § 1983, alleging that his detention violates the Fourth Amendment.

20  ECF No. 1 at 10. Specifically, he asserts that Defendants' policy and practice of

TEMPORARY RESTRAINING ORDER – 2

detaining individuals before they are released from DOC's custody based solely on an immigration hold issued pursuant to a U.S. Department of Homeland Security (DHS) administrative warrant violates his Fourth Amendment right to be free from unreasonable seizure. *Id.* at 1–2 and 10. Sanchez Ochoa argues that such administrative warrants—issued by DHS personnel without a judicial warrant or independent finding of probable cause that the person subject to the warrant has committed a crime—do not provide state or local law enforcement officers authority to arrest or detain individuals for immigration violations. *Id.* at 2.

Sanchez Ochoa is currently charged with second degree assault and malicious mischief in state court and has been in the DOC's custody since May 3, 2017. *Id.* at 3; ECF No. 7-2 at 7; ECF No. 22 at 2. He has not been charged with a federal offense, he has not been sentenced, and he is not awaiting transport to a Bureau of Prisons facility. ECF No. 1 at 4.

Sanchez Ochoa's immigration status became an issue shortly after his detention began, on May 4, 2017, when ICE Enforcement and Removal Operations Deportation Officer Terrence Hawkinson learned that ICE previously encountered Sanchez Ochoa in August 2008. ECF No. 26-1 at 2. In August 2008, Jackson County, Oregon officials detained Sanchez Ochoa on a state criminal charge (and subsequent conviction) of driving under the influence (DUI). *Id.* at 2. After his release by local law enforcement, ICE officers took Sanchez Ochoa into custody.

1  *Id.* at 2. ICE ultimately granted Sanchez Ochoa's request to voluntarily return to

2  Mexico, and released him. *Id.* at 2.

3  After learning Sanchez Ochoa's prior contact with ICE officials in 2008,

4  Officer Hawkinson interviewed Sanchez Ochoa at the Yakima County jail. ECF

5  No. 1 at 4; ECF No. 26-1 at 3. Sanchez Ochoa identified himself and admitted that

6  he is a citizen of Mexico.[1] ECF No. 26-1 at 3. But Sanchez Ochoa refused to answer

7  Officer Hawkinson's subsequent questions. ECF No. 1 at 4; ECF No. 26-1 at 3.

8  Thereafter, DHS issued an administrative warrant for Sanchez Ochoa's arrest

9  using Form I-200. ECF No. 7-1 at 5; ECF No. 26-1 at 3. This document is directed

10  to "any immigration officer" authorized by the Immigration and Nationality Act

11  (INA) and implementing regulations to "serve warrants of arrest for immigration

12  violations." ECF No. 7-1 at 5. ICE Enforcement and Removal Supervisory

13  Detention and Deportation Officer Michael Gladish signed the administrative arrest

14  warrant on Form I-200 after Officer Hawkinson presented information about

15  Sanchez Ochoa. ECF No. 7-1 at 5; ECF No. 26-1 at 3.

16  The administrative warrant states that Gladish "determined that there is

17  probable cause to believe that Sanchez Ochoa, Antonio is removable from the

18  United States." ECF No. 7-1 at 5. Gladish's determination was based on "statements

19

20  [1] Sanchez Ochoa alleges that no DOC employee advised him that he could choose
not to speak with immigration officials. ECF No. 1 at 4.

TEMPORARY RESTRAINING ORDER – 4

made voluntarily by" Sanchez Ochoa "to an immigration officer and/or other reliable evidence that affirmatively indicate [Sanchez Ochoa] either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id.* at 5. The warrant commands any authorized immigration officer to "arrest and take [Sanchez Ochoa] into custody for removal proceedings." *Id.*

Sanchez Ochoa also alleges that DOC no longer accepts ICE detainers (I-247 Forms) alone as the basis for detaining an individual on ICE's behalf. ECF No. 1 at 6–7; ECF No. 7-3 at 9. However, Sanchez Ochoa asserts that DOC currently places immigration holds on individuals based solely on administrative warrants (I-200 Forms). ECF No. 1 at 7; ECF No. 7-3 at 9, 16. The record reflects that DOC placed an "immigration hold" on Sanchez Ochoa's jail roster—which is a document produced by DOC pursuant to Washington Revised Code (RCW) § 70.48.100[2]—citing "ICE" as the relevant statute giving rise to his detention. ECF No. 7-2 at 7.

---

[2] RCW 70.48.100(1) provides that "a department of corrections or chief law enforcement officer responsible for the operation of a jail *shall* maintain a [public] jail register" containing, among other things, the "name of each person confined in the jail with the hour, date, and *cause of confinement.*" (emphasis added). RCW 70.48.100(2) directs that "the records of a person confined in jail shall be held in confidence and shall be made available only to *criminal justice agencies* as defined in RCW 43.43.705." (emphasis added). "Criminal justice agencies" are defined as "those public agencies within or outside the state which perform, as a principal function, activities directly relating to the apprehension, prosecution, adjudication or rehabilitation of criminal offenders." RCW 43.43.705.

TEMPORARY RESTRAINING ORDER – 5

There is no case number or bond amount listed for Sanchez Ochoa's immigration hold. ECF No. 7-2 at 7.

DOC contests Sanchez Ochoa's characterization of the facts. *See generally* ECF No. 24. Scott Himes, Chief of the DOC, states that he is not sure what "immigration hold" means. ECF No. 22 at 3. Himes, and all Defendants, maintain that DOC is holding Sanchez Ochoa pursuant to state criminal charges only, and that Sanchez Ochoa's detention continues because he has not posted bail on those charges. ECF No. 24 at 3. Defendants assert that they "noted in [their] records that [DHS] has issued a Form I-200 [] concerning Mr. Ochoa." *Id.* But they allege the purpose of this notation is only "to ensure that when he is released, Mr. Ochoa will be released into the custody of DHS." *Id.* Chief Himes describes DOC's policy with regard to administrative warrants issued on I-200 Forms as follows:

> The Yakima County Jail's notation regarding the I-200 is similar to the manner in which the jail would record any notice of a warrant or criminal charges issued by another jurisdiction. For example, if the Yakima County Jail received notice that criminal charged [*sic*] have been filed against an inmate in another county, such notice is also entered into the electronic jail management system, which then populates the online jail web portal. As with the I-200, the purpose of recording the notice is to ensure that the inmate is transferred to the appropriate jurisdiction upon release from custody of Yakima County.

ECF No. 22 at 2–3.

On July 5, 2017, Sanchez Ochoa requested that Defendants remove the immigration hold. ECF No. 1 at 8. In a letter dated July 6, 2017, Defendant Director

TEMPORARY RESTRAINING ORDER – 6

Campbell made no decision or promises about removing the "ICE hold," but said that Sanchez Ochoa could post bail on the ICE hold "through the Federal Courts." ECF No. 1 at 8; ECF No. 7-4 at 16.

Sanchez Ochoa contends that his family has the resources to pay the $ 50,000 bond on his state charges but that DOC will not accept bail because of the immigration hold. ECF No. 1 at 8; ECF No. 6 at 2; ECF No. 8 at 2. Moreover, he alleges bail bondspersons will not provide services on state charges to individuals with immigration holds detained in Yakima County because they will not be released from custody. ECF No. 1 at 9; ECF No. 9 at 2; ECF No. 10.

Defendants contest Sanchez Ochoa's factual allegations. They state that the jail is willing to accept bail on Sanchez Ochoa's state charges, that he is being detained on state charges only and not because of an immigration hold, and that the immigration hold is a notation meant to ensure that DOC releases Sanchez Ochoa to DHS's custody, should he be released from DOC custody. ECF No. 24 at 2–3.

The day after he filed this lawsuit, Sanchez Ochoa filed the present motion for a temporary restraining order (TRO) asking this Court to direct Defendants to remove the immigration hold so that he can post bail on his state charges and be released. ECF No. 6 at 1–2. Defendants counter that he is free to post bail on his state charges. ECF No. 24 at 3.

The day after Sanchez Ochoa filed his motion seeking a TRO, he served Defendants Himes and Yakima County with notice of this lawsuit and the TRO motion, among other documents. ECF No. 12 and 13. Defendant Campbell was not served with notice of either the suit or the TRO motion. ECF No. 14. Two days later, on July 20, 2017, Quinn N. Plant and Kenneth W. Harper of Menke, Jackson, Beyer, Ehlis & Harper entered their appearance as attorneys for Defendants. ECF Nos. 15 and 16. Defendants answered the complaint and filed a memorandum opposing Sanchez Ochoa's TRO motion. ECF Nos. 21 and 24.

In addition, the United States, through the Department of Justice (DOJ) and the U.S. Attorney for the Eastern District of Washington, sought leave from the Court to potentially file a statement of interest in this case. ECF No. 18. The United States also requested a seven-day continuance of the TRO hearing, ECF No. 18, to which Sanchez Ochoa objected, ECF No. 19. The Court granted a four-day postponement of the TRO hearing and allowed the United States to file a statement of interest. ECF No. 25. The United States filed its statement of interest on July 21, 2017. ECF No. 26. On July 24, 2017, Sanchez Ochoa filed a response to the United States' statement of interest, ECF No. 27, supporting declaration, ECF No. 28, and reply memorandum in support of his motion for a temporary restraining order, ECF No. 29.

## III.    THE STATUTES, REGULATIONS, AND ICE DETAINER POLICY AT ISSUE HERE

### A.    Cooperation between federal, state, and local officials on immigration matters

The Immigration and Nationalization Act (INA) contemplates both formal and informal cooperation between federal, state, and local authorities on immigration matters. *See* 8 U.S.C. § 1357(g). Pursuant to 8 U.S.C. § 1357(g)(1)–(9), state and local officials may enter into written agreements with DHS to perform certain functions usually conducted by federal immigration officers respecting the investigation, apprehension or detention of certain immigrants. State and local authorities who enter into these formal written agreements are subject to the "direction and supervision" of the DHS Secretary. 8 U.S.C. § 1357(g)(3).[3] Federal authorities may also enter into agreements with state and local authorities to confine and detain persons detained by ICE. 8 U.S.C. § 1103(a)(11)(B).

A formal agreement, however, is not required for all cooperation between federal, state, and local entities. Pursuant to 8 U.S.C. § 1357(g)(10)(A) and (B), "any officer or employee of a State or political subdivision of a State" can (1)

---

[3] Although Congress initially charged the Attorney General with implementing the INA, Congress abolished the Immigration and Naturalization Service (INS) in 2002 and transferred jurisdiction to enforce and administer the nation's immigration laws to the Secretary of Homeland Security. *See* 6 U.S.C. §§ 202, 291, & 557; 8 U.S.C. § 1103; *La. Forestry Ass'n, Inc. v. Sec'y U.S. Dep't of Labor*, 747 F.3d 653, 659 (3rd Cir. 2014).

TEMPORARY RESTRAINING ORDER – 9

communicate with DHS regarding a person's immigration status or (2) "otherwise cooperate" with DHS in the "identification, apprehension, detention, or removal" of persons unlawfully present in the United States. The precise contours and limits of communication and cooperation between federal, state, and local officials is not clear. While no federal, state, or local government entity or official may prohibit or restrict any government entity or official from sending or receiving information regarding a person's citizenship or immigration status with another federal, state, or local government entity, it is unclear precisely what actions are covered by this rule. *See* 8 U.S.C. § 1373. Regarding informal cooperation between federal, state, and local officials, the Supreme Court has explained:

> There may be some ambiguity as to what constitutes cooperation under the federal law; but no coherent understanding of the term would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government. The Department of Homeland Security gives examples of what would constitute cooperation under federal law. These include situations where States participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration officials to gain access to detainees held in state facilities. . . . State officials can also assist the Federal Government by responding to requests for information about when an alien will be released from their custody.

*Arizona v. United States*, 567 U.S. 387, 410 (2012) (citations omitted). Additionally, the Supreme Judicial Court of Massachusetts recently held that § 1357's provisions on state cooperation with federal immigration officials do not affirmatively grant authority to state or local officers to make arrests not otherwise

TEMPORARY RESTRAINING ORDER – 10

1  authorized by state law. *Lunn v. Commonwealth*, __ N.E.3d __, 2017 WL 3122363,

2  at *11–13 (Mass. 2017).

3  **B.    Federal immigration detainers**

4          DHS issues immigration detainers pursuant to sections 236 and 287 of the

5  INA and 8 C.F.R. § 287.7. "A detainer serves to advise another law enforcement

6  agency that the Department seeks custody of an alien presently in the custody of

7  that agency, for the purpose of arresting and removing the alien." 8 C.FR. §

8  287.7(a). Such a request is made because it is impracticable or impossible for DHS

9  to assume custody over a person. *Id.* Presently, DHS uses Form I-247A

10 (Immigration Detainer – Notice of Action) to issue immigration detainers. ECF No.

11 26 at 8. Detainers ask that cooperating agencies keep a person in custody for no

12 longer than 48 hours, excluding Saturdays, Sundays, and holidays. 8 C.F.R. §

13 287.7(d).[4] Further, 8 C.F.R. § 287.7(b) lists the officers authorized to issue

14 immigration detainers. These include, as relevant here, "supervisory and managerial

15 personnel who are responsible for supervising the activities of" immigration

16 enforcement agents, among others. 8 C.F.R. § 287.7(b)(1)–(8).

17 _____

18 [4] The United States provides a long and detailed description of detainers in cases
   where a person has been arrested for a controlled substance violation by a state,
19 local, or federal law enforcement agency. Here, while Sanchez Ochoa was arrested
   in 2008 for a DUI, his present criminal charges concern assault and malicious
   mischief. ECF No. 7-2 at 7. Nothing suggests that a controlled substance is at issue.
20 Accordingly, provisions related to detainers in cases where a person is arrested for
   a controlled substance violation are inapposite here.

TEMPORARY RESTRAINING ORDER – 11

## C.    Warrants issued by DHS

Pursuant to 8 U.S.C. § 1226(a), a person may be "arrested and detained pending a decision on whether the alien is to be removed from the United States" on a warrant issued by the Attorney General.[5] A warrant issued under this discretionary authority is necessarily a warrant for civil—as opposed to criminal—immigration enforcement. *See Arizona*, 567 U.S. at 407 ("As a general rule, it is not a crime for a removable alien to remain present in the United States."). This is also the case when a warrant is issued after a person is ordered removed following a removal hearing. *Id.* at 408 (citation omitted). Moreover, as the Supreme Court has noted, when either of the immigration related warrants described above are issued, they "are executed by federal officers who have received training in the enforcement of immigration law." *Id.* (citation omitted).

## D.    Warrantless arrests by immigration officials

When no warrant to arrest or detain a person pending a decision as to his or her removability from the United States has issued, immigration enforcement officers may arrest a person for "being 'in the United States in violation of any [immigration] law or regulation,' for example, but only when the alien 'is likely to

---

[5] As explained above, following Congress' reorganization of the agencies tasked with enforcing the immigration laws, references to the Attorney General in certain immigration related statutes, including § 1226, actually refer to the Secretary of DHS.

TEMPORARY RESTRAINING ORDER – 12

1   escape before a warrant can be obtained.'" *Id.* at 408 (quoting 8 U.S.C. §

2   1357(a)(2)). Moreover, in other litigation, ICE has conceded that detaining a person

3   pursuant to an ICE immigration detainer constitutes a warrantless arrest. *Moreno v.*

4   *Napolitano*, 213 F. Supp. 3d 999, 1005 (N.D. Ill. Sept. 20, 2016) (citing the

5   defendants' summary judgment briefing and *Morales v. Chadbourne*, 793 F.3d 208,

6   217 (1st Cir. 2015)). The *Moreno* court further held that "because immigration

7   officers make no determination whatsoever that the subject of a detainer is likely to

8   escape upon release before a warrant can be obtained, ICE's issuance of detainers

9   that seek to detain individuals without a warrant goes beyond its statutory authority

10  to make warrantless arrests under 8 U.S.C. § 1357(a)(2)." *Id.* at 1008–09.

11  **E.    ICE's immigration detainer policy**

12      Relevant to the relief Sanchez Ochoa requests is ICE's policy for issuing

13  immigration detainers asking local law enforcement to hold people suspected of

14  being unlawfully present in the United States. On March 24, 2017, Thomas D.

15  Homan, ICE's Acting Director, issued Policy Number 10074.2 regarding the

16  Issuance of Immigration Detainers by ICE Immigration Officers ("Policy").

17  *Available at* https://www.ice.gov/sites/default/files/documents/Document/2017/

18  10074-2.pdf (last visited on July 27, 2017). The Policy became effective on April

19  2, 2017, and established ICE's current "policy and procedures regarding the

20  issuance of civil immigration detainers to federal, state, local, and tribal law

TEMPORARY RESTRAINING ORDER – 13

1    enforcement agencies (LEAs)." *Id.* at 1. The Policy defines a detainer as "[a] notice

2    that ICE issues to a federal, state, local, or tribal LEA to inform LEA that ICE

3    intends to assume custody of a removable alien in the LEA's custody." *Id.* at 3.

4          Under the Policy, ICE may issue a detainer to a LEA only if "the LEA has

5    arrested the alien for a criminal offense in an exercise of the LEA's independent

6    arrest authority." *Id.* at 2. The Policy directs ICE immigration officers to issue all

7    ICE detainers accompanied by either (1) a Form I-200 (warrant for arrest of alien)

8    or (2) a Form I-205 (warrant of removal/deportation), either of which must be

9    signed by an authorized ICE officer. *Id.* The Policy directs officers to follow this

10   procedure to "establish probable cause to believe that the subject is an alien who is

11   removable from the United States before issuing a detainer with a [LEA]." *Id.* ICE

12   implemented these measures—even though it maintains that it is unnecessary—

13   because a district court ruled that "detention pursuant to an ICE detainer constitutes

14   a warrantless arrest" and the INA "only authorizes a warrantless arrest if there is

15   reason to believe the alien will escape before an arrest warrant can be secured." *Id.*

16   at 2 n. 2 (citing *Moreno*, 213 F. Supp. 3d at 1008–09).

17         The Policy defines "probable cause" as "the facts and circumstances within

18   the officer's knowledge and of which they have reasonably trustworthy information

19   that are sufficient in themselves to warrant a person of reasonable caution in the

20   belief that an individual is a removable alien." *Id.* at 2. It further directs that an ICE

TEMPORARY RESTRAINING ORDER – 14

1  officer cannot establish probable cause for purposes of the detainer "solely based

2  on evidence of foreign birth and the absence of records in available databases." *Id.*

3  It does, however, provide four circumstances that may establish probable cause: (1)

4  where there is a final order of removal; (2) where there is an ongoing removal

5  proceeding; (3) where a person's biometric information matches information in a

6  federal database confirming that a person lacks lawful immigration status; and (4)

7  where a person makes voluntary statements to an ICE officer "and/or other reliable

8  evidence" indicates that a person lacks lawful immigration status. *Id.* at 4. If a

9  person is not subject to a final order or removal, the Policy instructs ICE officers to

10  issue a detainer with an administrative warrant. *Id.* at 5.

11  ## IV.   LEGAL STANDARD

12  Federal Rule of Civil Procedure 65 governs preliminary injunctions and

13  temporary restraining orders. Plaintiffs seeking a TRO must provide written or oral

14  notice to the party or parties potentially subject to a TRO unless the plaintiff seeking

15  the TRO meets the requirements of Rule 65(b)(1)(A)–(B).

16  Once a plaintiff meets the notice requirements, he or she must also meet the

17  standard for issuing a TRO. The standard for issuing preliminary injunctions and

18  TROs is the same. *See, e.g.*, *Koller v. Brown*, 224 F. Supp. 3d 871, 875 (N.D. Cal.

19  Dec. 12, 2016) (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S.

20  1345, 1347 n. 2 (1977)). A TRO, however, is "an extraordinary remedy that may

TEMPORARY RESTRAINING ORDER – 15

only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 875 (citing *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008)).

To obtain a TRO, a plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2015) (quoting *Winter*, 555 U.S. at 19). Whether the plaintiff is likely to succeed on the merits is a threshold inquiry. "[W]hen 'a plaintiff has failed to show the likelihood of success on the merits, [the court] need not consider the remaining three *Winter* elements.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)) (internal quotations and alterations omitted).

## V.    DISCUSSION

### A.    Sanchez Ochoa has notified Defendants of the TRO.

It is uncontested that Sanchez Ochoa properly notified Defendants of the TRO motion. Quinn N. Plant and Kenneth W. Harper of Menke, Jackson, Beyer, Ehlis & Harper entered their appearances as attorneys for Defendants. ECF Nos. 15 and 16. Indeed, Defendants answered the complaint and filed a memorandum

1    opposing Sanchez Ochoa's TRO motion. ECF Nos. 21 and 24. Moreover, the

2    United States has filed a statement of interest in this case. ECF No. 26. Accordingly,

3    the notice requirement is met.

4    **B.    Sanchez Ochoa is likely to succeed on the merits of his Fourth**
         **Amendment claim.**

5

6        To establish liability under 42 U.S.C. § 1983, "a plaintiff must show both (1)

7    deprivation of a right secured by the Constitution and laws of the United States, and

8    (2) that the deprivation was committed by a person acting under color of state law."

9    *Chudacoff v. Univ. Med. Cntr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011).

10   Municipalities may be subject to damages liability under § 1983. *See Monell v.*

11   *Dep't of Soc. Servs.*, 436 U.S. 658 (1978).[6] Here, Sanchez Ochoa alleges that

12   Defendants violated his Fourth Amendment rights by impermissibly reporting an

13   immigration hold on the jail roster pursuant to a DHS administrative warrant,

14   thereby preventing his release from DOC custody. ECF No. 1 at 4–10.

15   **1.    The Fourth Amendment's protection against unreasonable**
            **seizures in the context of pretrial detention.**

16       The Fourth Amendment protects against "unreasonable searches and

17   seizures." U.S. Const. amend. IV. A defendant may rely on the Fourth Amendment

18

19   _____

20   [6] Defendants assert in their answer that Sanchez Ochoa has failed to establish
     municipal liability pursuant to *Monell*. ECF No. 21 at 9. But Defendants do not raise
     this argument in opposition to Sanchez Ochoa's Motion for Temporary Restraining
     Order. *See* ECF No. 24.

to challenge his pretrial detention. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917 (2017) ("This Court decided some four decades ago that a claim challenging pretrial detention fell within the scope of the Fourth Amendment."). This protection "prohibits government officials from detaining a person in the absence of probable cause." *Id.* at 918. "[P]robable cause for the issuance of an arrest warrant must be determined by someone independent of police and prosecution." *Gerstein v. Pugh*, 420 U.S. 103, 117–18 (1975) (citing *Coolidge v. N.H.*, 403 U.S. 443, 449–453 (1971); *Shadwick v. City of Tampa*, 407 U.S. 345 (1972)). Accordingly, holding a person in custody "for a substantial period solely on the decision of a prosecutor" is unlawful. *Manuel*, 137 S. Ct. at 917 (quoting *Gerstein*, 420 U.S. at 106). In short, pretrial detention is "unlawful unless a judge (or grand jury) first makes a reliable finding of probable cause." *Id.*

   2.   **Sanchez Ochoa has established that his immigration hold led to a subsequent seizure by Defendants subject to Fourth Amendment protections.**

   Where detention is extended as a result of an immigration hold, that extension is a subsequent seizure for Fourth Amendment purposes. *See Morales*, 793 F.3d at 217 (holding that an immigration detainer that resulted in additional detention after criminal custody terminated constituted a new seizure for Fourth Amendment purposes); *Trujillo Santoyo v. United States, et al*, 5:16-cv-855-OLG, 2017 WL 2896021, at *6 (W.D. Tex. June 5, 2017) ("[D]etention pursuant to an ICE detainer

request is a Fourth Amendment seizure that must be supported by probable cause or a warrant."); *Miranda-Olivares v. Clackamas Cnty.*, No. 3:12-cv-02317-ST, 2014 WL 1414305 (D. Or. Apr. 11, 2014) (holding that continuation of detention pursuant to an ICE detainer constituted a new seizure independent of plaintiff's detention on state charges). Defendants and the United States argue that there has been no subsequent seizure in this case because the legal basis of Sanchez Ochoa's present detention is his alleged state-law violations only, not his immigration status. ECF No. 24 at 6; ECF No. 26 at 17–19. They suggest that a subsequent seizure can occur only if a person's state custody ends through some administrative or judicial action and the person is then taken into ICE's custody. ECF No. 24 at 4–6; ECF No. 26 at 19. That is simply not the case. A new Fourth Amendment seizure occurs if, as a factual matter, a person's detention is extended because of an immigration hold.

This is illustrated by *Miranda-Olivares*, where the Plaintiff could have posted bail on her state charges, but did not do so because she was told that, even if she did, she would not be released because of her ICE detainer. 2014 WL 1414305, at *2. Her family was allegedly willing and able to pay to post bail, but did not do so because of their understanding that she would not be released. *Id.* As a technical matter, Miranda-Olivares remained in custody on state charges, but the cause of her continued custody was not the state charges, it was her ICE detainer. In this context, the court concluded that Miranda-Olivares's detention was not a continuation of her

initial arrest; instead, it was an independent seizure resulting from the ICE detainer. *Id.* at *9.

Accordingly, to decide whether a subsequent seizure has occurred here, the Court must determine whether the immigration hold has caused or will cause Sanchez Ochoa to remain in custody longer than he otherwise would on the basis of his state charges. Defendants argue that the immigration hold will not extend Sanchez Ochoa's detention because DOC will release him if he posts bail. ECF No. 24 at 2. This argument fails, at least at the TRO stage, for two independent reasons. First, Sanchez Ochoa has adequately pleaded facts, with supporting documents, to show that Defendants were not willing to release him even if he posted bail on his state charges. ECF No. 7-3 at 9–10, 16. Second, regardless of whether, in the abstract, Defendants intended to accept bail on Sanchez Ochoa's state charges, Sanchez Ochoa has shown that bail was unavailable to him as a matter of fact. ECF Nos. 8, 9, and 10.

### a.    Sanchez Ochoa alleges facts showing that the County did not intend to accept bail.

Defendants argue that they will release Sanchez Ochoa from state custody if he posts bail on his state charges. ECF No. 24 at 2. Further, Scott Himes, Chief of the DOC, states that he is "not sure what ['immigration hold'] means." ECF No. 22 at 3. He, and all Defendants, maintain that DOC is holding Sanchez Ochoa pursuant to state criminal law charges only, and that DOC "will accept bail for Mr. Ochoa

TEMPORARY RESTRAINING ORDER – 20

1    and, upon receipt, will release Mr. Ochoa from the custody of Yakima County and

2    the Yakima County Jail." ECF No. 22 at 7; ECF No. 24 at 3.

3         First, it is disingenuous for Mr. Himes to assert that he does not know what

4    "immigration hold" means, as DOC itself placed an "immigration hold" on Sanchez

5    Ochoa's jail roster, citing "ICE" as the relevant "statute" for placing the hold. ECF

6    No. 7-2 at 7; ECF No. 22 at 3. Further, nothing in the record indicates that placing

7    immigration holds on persons in Yakima County's custody is a new policy. Indeed,

8    it is the Court's understanding that Yakima County has been placing immigration

9    holds on persons in their custody for years. Nothing in the record supports

10   Defendants' supposed ignorance.

11        Moreover, DOC's communications to Sanchez Ochoa's counsel before this

12   lawsuit was filed belie DOC's current claims that it intends to release Sanchez

13   Ochoa from the Yakima County jail upon his posting bail. In a July 5, 2017 letter

14   to DOC Director Ed Campbell, Sanchez Ochoa's counsel expressed concern that,

15   among other things, that "[b]y accepting administrative warrants as a basis for

16   detaining individuals, Yakima County is unlawfully preventing Mr. Sanchez from

17   being released on bail." ECF No. 7-3 at 9. In his response, Mr. Campbell does not

18   address bail on Sanchez Ochoa's state charges at all. Instead, he explains: "We have

19   confirmed that Mr. Sanchez can bail on his ICE hold. Unfortunately, we do not

20   accept the bail here at the Yakima County Jail. It must be processed through the

TEMPORARY RESTRAINING ORDER – 21

Federal Courts." ECF No. 7-4 at 16. This discussion implicitly acknowledges that DOC had no intention of releasing Sanchez Ochoa if he posted bail on his state charges. Accordingly, Sanchez Ochoa's allegation that he will continue to be detained on the basis of his immigration hold, regardless of whether he posts bail on his state charges, is well supported.[7]

### b. Sanchez Ochoa has shown that he is unable to obtain bail because of his immigration hold.

Irrespective of whether DOC would release Sanchez Ochoa if he posted bail, he has shown that he will be unable to post bail because of his immigration hold. Plaintiff and his family represent that they have the resources to obtain a bond to post bail on his state charges. ECF No. 8. However, Sanchez Ochoa alleges that he has been unable to post the $50,000 bond on his state charges because bondspersons will not provide services on state charges to individuals with immigration holds detained in Yakima County. ECF No. 1 at 9. This allegation is supported by the declarations of Sanchez Ochoa's sister, Griselda Reyes, who states that she has

_____

[7] To the extent DOC now in-fact intends to release Sanchez Ochoa if he posts bail, this voluntary act does not moot the controversy here because there can be no assurance that DOC will not revert to its alleged prior practice of not releasing persons with immigration holds. *See Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 173 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." (internal quotation marks and citations omitted)).

TEMPORARY RESTRAINING ORDER – 22

sufficient financial resources and is willing to pay the amount necessary for a bail bondsperson to post bond, but that she has "spoken to several bail bonds[persons] who have told [her] [Sanchez Ochoa] cannot be bonded out because of the immigration hold," ECF No. 8 at 1–2; a bail bondsmen, Javier Isquierdo, who states that his company "will not provide bond services on state court charges to individuals detained in Yakima County Jail when those individuals have an immigration hold, because in [his] experience those individuals will not be released from custody," ECF No. 9 at 1–2; and a criminal and immigration attorney with many years' experience practicing in Yakima, Amanda Stevens, who states that "[i]n [her] experience individuals with immigration holds are not able to obtain services to post bond through bail bond companies because those companies understand that individuals will not be released from custody," ECF No. 10 at 1–2. Moreover, in the Court's many years of experience practicing law in Yakima County before joining the bench, it was also the case then that an immigration hold placed on a person in Yakima County's custody resulted in his or her inability to post bail on state charges.

At oral argument, Defendants suggested that even if the immigration hold is removed from the jail roster, bail bondspersons could still make a public records request for the immigration status of an inmate and may refuse to provide services to such person on the basis that they will likely be detained by ICE upon release.

TEMPORARY RESTRAINING ORDER – 23

1    There is nothing in the record to support this assertion. On the record presently

2    before the Court, Sanchez Ochoa's allegations and supporting documents indicate

3    that bail bondspersons rely on DOC's notation of an immigration hold on the jail

4    roster because the notation indicates the person will not be released from DOC

5    custody. There is no indication in the record that any bail bondsperson would seek

6    out the immigration status of an inmate if there was no published notice of an

7    immigration hold,[8] or that a person would be unable to obtain the services of a bail

8    bondsperson on the basis that they may be detained by ICE after release from DOC

9    custody.

10         Sanchez Ochoa has adequately alleged that the immigration hold noted by

11    DOC will result in his continued detention because he cannot post bail. This is

12    sufficient to establish that the immigration hold caused a subsequent seizure for

13    Fourth Amendment purposes. *See Miranda-Olivares*, 2014 WL 1414305, at *9; *cf.*

14    *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (ICE detainer that prevented

15    plaintiff from obtaining services of bail bondsman was sufficient to establish cause

16    element of Article III standing for suit against DHS for claims based on unlawful

17    pretrial detention).

18

19

20

---

[8] The Court expresses no opinion on whether, under state public records law, DOC would be required or permitted to share the immigration status of a person in its custody with a private citizen.

TEMPORARY RESTRAINING ORDER – 24

1
2
### 3.   Defendants placed an immigration hold on Sanchez Ochoa pursuant to an administrative warrant that was supported by a probable cause determination made by an ICE officer.

3      Having found that the immigration hold Defendants placed against Sanchez

4   Ochoa caused a subsequent seizure for Fourth Amendment purposes, the Court

5   considers the probable cause that supported the Form I-200 administrative warrant.

6      It is undisputed that Michael Gladish, a Supervisory Detention and

7   Deportation Officer with ICE, signed the administrative warrant at issue. ECF No.

8   7-1 at 5. The administrative warrant states Gladish "determined that there is

9   probable cause to believe that Sanchez Ochoa, Antonio is removable from the

10  United States." *Id.* Gladish's determination was based on "statements made

11  voluntarily by" Sanchez Ochoa "to an immigration officer and/or other reliable

12  evidence." *Id.* It is also undisputed that Gladish is not a neutral magistrate.

13  Accordingly, the probable cause determination here was made by an ICE officer,

14  not a neutral magistrate.

15     It is also important to note that nowhere on the administrative warrant does

16  Gladish provide any factual details about what led him to make his determination.

17  It does not mention the August 2008 encounter with ICE. ECF No. 26-1 at 2. There

18  is nothing on the face of the document other than a marked checkbox next to the

19  last option for probable cause available on the form. Nevertheless, Gladish signed

20

TEMPORARY RESTRAINING ORDER – 25

the administrative warrant asserting that he has probable cause to believe Sanchez

Ochoa is removable.

### 4.    Defendants cannot rely on the probable cause determination provided in the administrative warrant to detain Sanchez Ochoa.

#### a.    Defendants currently informally communicate and cooperate with federal authorities on enforcement activities related to immigration law.

It is undisputed that states and localities may communicate and cooperate

with federal law enforcement agencies on immigration enforcement at the request

of federal authorities. ECF No. 26 at 21–26; ECF No. 27 at 2–4; *see also* 8 U.S.C.

§ 1357(g). Such communication and cooperation can be formal or informal. *See*

discussion re communication and cooperation, *supra* at section III.A.

Here, the communication and cooperation between Defendants and federal

immigration authorities is conducted without a formal written agreement. The

record reflects that Defendants no longer accept ICE detainer requests alone as a

basis for detaining individuals. ECF No. 7-3 at 9. Defendants have a policy and

practice of noting administrative warrants received from federal authorities on their

jail roster to ensure release of persons subject to administrative warrants to DHS,

ECF No. 22 at 2, and Defendants routinely allow ICE officers into Yakima County

jail and also inform ICE of a person's release date and time at ICE's request. ECF

No. 26-1 at 4.

1  In addition, the United States Marshals Service and Yakima County have

2  entered into an Intergovernmental Agreement (IGA) regarding the housing of

3  persons under federal custody in Yakima County jail. ECF Nos. 26-1 and 28-1 at 9.

4  However, nothing in the record establishes or suggests the existence of a formal

5  written agreement between Defendants and federal immigration authorities

6  regarding the performance of immigration-officer functions by Defendants. *See* 8

7  U.S.C. § 1357(g).

8  That an IGA exists does not negate that there is no written agreement for the

9  purposes of inter-agency communication and cooperation regarding the

10  enforcement of immigration law. The IGA addresses housing of persons under

11  federal custody in facilities owned and operated by Defendant Yakima County. ECF

12  No. 28-1. Persons housed in Yakima County's facilities under the IGA include, but

13  are not limited to, those who are suspected to be unlawfully present in the United

14  States. ECF No. 28-1 at 9 ("The population . . . will include individuals charged

15  with federal offenses and detained while awaiting trial, individuals who have been

16  sentenced and are awaiting designation and transport to a Bureau of Prisons (BOP)

17  facility, and individuals who are awaiting a hearing on their immigration status or

18  deportation.").

19  Accordingly, the communication and cooperation between Defendants and

20  federal immigration enforcement authorities is best described as informal. *See* 8

TEMPORARY RESTRAINING ORDER – 27

1  U.S.C. § 1357(g)(10); *see also* discussion re communication and cooperation *supra*

2  section III.A.

### b. Defendants are limited in the activities they can undertake related to the enforcement of immigration law.

Communication and cooperation between federal, state, and local officials on

immigration matters is clearly permissible, but the role state and local officials can

take in such matters is limited. *Arizona*, 567 U.S. at 408, 411–12. Indeed, state and

local law enforcement and other officials are *presumed* to be unqualified and unable

to perform the functions of federal immigration law enforcement officers, at least

as those functions pertain to enforcement of *civil* immigration violations. *See* 8

U.S.C. § 1357(g)(1); *cf. Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451,

464 (4th Cir. 2013) (citing *Arizona*, 567 U.S. at 407) ("Although the Supreme Court

has not resolved whether local police officers may detain or arrest an individual for

suspected *criminal* immigration violations, the Court has said that local law officers

generally lack authority to arrest individuals [for] *civil* immigration violations.").

The fact that the federal immigration enforcement statutory and regulatory scheme

explicitly states that state and local law enforcement *may* become qualified to

"perform a function of an immigration officer in relation to the investigation,

apprehension, or detention of aliens in the United States" when the Attorney

General enters into a written agreement with state or local governments supports

this point. 8 U.S.C. § 1357(g)(1). It is only through such formal, written agreements,

and adequate training, that state and local officials can perform the functions of an immigration officer as relates to the "investigation, apprehension, or detention" of individuals unlawfully present in the country. 8 U.S.C. § 1357(g)(1); *see also* 8 C.F.R. §§ 287.5(e)(1), (e)(2)(iii), (e)(3), (e)(4), and (f) (noting that listed "immigration officers who have successfully completed basic immigration law enforcement training," are authorized to conduct immigration related enforcement activities, including executing arrest warrants for administrative immigration violations).

A recent decision by the Supreme Judicial Court of Massachusetts lends further support to the proposition that a written agreement is generally required for state and local officials to perform the functions of an immigration officer. In *Lunn v. Commonwealth*, __ N.E. 3d __ , 2017 WL 3122363 (Mass. 2017), the question before the court was whether Massachusetts state law authorized state court officers "to arrest someone at the request of Federal immigration authorities, pursuant to a civil immigration detainer, solely because the Federal authorities believe the person is subject to civil removal." *Id.* at *1. In holding that no Massachusetts state law provides state court officials such authority, the court discussed the inter-agency communication and cooperation contemplated in 8 U.S.C. § 1357(g). *Id.* at 11–12. Particularly, with regard to communication and cooperation under section 1357(g)(10), the court explained that "it is not reasonable to interpret § 1357(g)(10)

TEMPORARY RESTRAINING ORDER – 29

1    as affirmatively granting authority to all State and local officers to make arrests that

2    are not otherwise authorized by State law." *Id.* at *12. The court further explained

3    that,

4        [s]ection 1357(g)(10), read in the context of § 1357(g) as a whole,
         simply makes clear that State and local authorities, even without a

5        287(g) agreement that would allow their officers to perform the
         functions of immigration officers, may continue to cooperate with

6        Federal immigration officers in immigration enforcement to the extent
         they are authorized to do so by their State law and choose to do so.

7    *Id.*

8        As discussed above, no written agreement under § 1357(g) exists in this case.

9    And the Court will not imagine or create an agreement where none exists. This is

10   not a minor point. Because no such written agreement exists here—nor is there any

11   indication that Defendants or anyone in their employment are qualified to perform

12   the functions of an immigration officer—Defendants are necessarily limited in the

13   communication and cooperation they can provide to federal immigration

14   enforcement. *See Arizona*, 567 U.S. at 407–415 (discussing the immigration

15   enforcement scheme Congress established and the ways in which state and local

16   officials may become involved).

17       c.    **The administrative warrant at issue here was not directed to
               Defendants and is not a request from DHS to Defendants**

18             **asking that Defendants detain Sanchez Ochoa.**

19       The record contains only an administrative warrant on a Form I-200. ECF

20   No. 7-1 at 5. In defending Defendants' action placing an immigration hold based

TEMPORARY RESTRAINING ORDER – 30

on the administrative warrant, the United States describes ICE's current immigration detainer Policy and argues that when states and localities comply with ICE issued detainers under the Policy, there is no Fourth Amendment violation. ECF No. 26 at 29–35. The Court need not decide whether this argument is correct because no ICE detainer has been issued in this case. An administrative warrant alone is not an ICE issued detainer sent to state and local authorities informing them that ICE intends to assume custody over a person. *See* discussion re ICE's immigration detainer policy, *supra* section III.E. Indeed, ICE's current Policy regarding immigration detainers—which, again, are the documents ICE issues to inform state and local officials that "ICE intends to assume custody of a removable alien in [the LEA's] custody"—states that "[a]ll immigration detainers . . . must be accompanied by either Form I-200 . . . or Form I-205." Policy at 3, 4, *available* at https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf (last accessed on July 27, 2017).

In this case, there is only an administrative warrant. Nothing in the record suggests that ICE requested or in any other way asked that Defendants arrest or detain Sanchez Ochoa. On this point, ICE Assistant Field Director Michael A. Melendez's declaration is helpful. Melendez describes both what happened in Sanchez Ochoa's case and ICE's procedures as practiced in Yakima County. In Sanchez Ochoa's case, ICE Officer Hawkinson interviewed Sanchez Ochoa in the

TEMPORARY RESTRAINING ORDER – 31

1    Yakima County jail on May 4, 2017, after learning about Sanchez Ochoa's prior

2    encounter with ICE in 2008. ECF No. 26-1 at 2–3. Officer Hawkinson thereafter

3    sought the administrative warrant at issue here. *Id.* at 3. Then "[Officer] Hawkinson

4    gave a copy of the executed Form I-200 to Yakima County Jail staff." *Id.* There is

5    no mention in the record that Officer Hawkinson or anyone else did anything other

6    than hand the Form I-200 administrative warrant to Yakima County jail staff.

7        As discussed above, the administrative warrant issued against Sanchez Ochoa

8    is directed at "any immigration officer" authorized by the INA and implementing

9    regulations to "serve warrants of arrest for immigration violations." ECF No. 7-1 at

10   5. Defendants are not authorized or qualified to perform the duties of immigration

11   officers. *See* discussion re state and local official's immigration authority, *supra*

12   section V.B.4.a & b. Nothing in the administrative warrant indicates that it is

13   directed at Yakima County officials or anyone other than authorized immigration

14   officers. Thus, the administrative warrant cannot be read as directed to Defendants.

15       To the extent the United States argues that an ICE detainer and an

16   administrative warrant are both requests from federal to state and local authorities,

17   the Court finds that argument unavailing. The Form I-200 alone, on its face, did not

18   provide a sufficient basis from which Defendants—who are not qualified to make

19   determinations of immigration law and cannot themselves enforce immigration

20   laws—could understand that federal authorities were making a request for

TEMPORARY RESTRAINING ORDER – 32

cooperation from them. And merely handing the warrant to Yakima County jail staff does not magically convert it into such a request, much less authorization for detention.

Accordingly, the administrative warrant at issue here cannot be seen as a request, direction, authorization, or other instruction from DHS to Defendants seeking their assistance in detaining Sanchez Ochoa.

### d. Defendants' placement of an immigration hold on Sanchez Ochoa does not fall within the permissible exchange or maintenance of information about his immigration status.

As discussed above, communication and cooperation between Defendants and federal immigration authorities is permissible. That means, for example, that Defendants may inform ICE about Sanchez Ochoa's release date from Yakima County's custody. *See* 8 U.S.C. § 1357(g)(10).

This manner of information sharing is also subject to 8 U.S.C. § 1373. This section states that government entities or officials cannot "prohibit, or in any way restrict, any government entity or official from sending to, or receiving from [federal immigration authorities] information regarding the citizenship or immigration status" of any individual. 8 U.S.C. § 1373(a). It also prohibits any restrictions on the ability of any federal, state, or local government entity to (1) send to or request or receive information from ICE; (2) maintain information about an individual's immigration status; or (3) exchange such information with other

1    federal, state, or local government entities. 8 U.S.C. § 1373(b). Lastly, it obligates

2    federal immigration authorities to respond to inquiries about a person's immigration

3    status by other federal, state, or local agencies. 8 U.S.C. § 1373(c).

4         As discussed above, the administrative warrant here was not a request for

5    information from ICE to Defendants. To the extent ICE, other federal immigration

6    authorities, or Yakima County provided information about Sanchez Ochoa's

7    immigration status in this case, 8 U.S.C. § 1373 prohibits any restraint on the flow

8    of such information between the government agencies involved in this case.

9         However, to the extent Defendants viewed the administrative warrant as a

10   request to place an immigration hold on Sanchez Ochoa, that action went beyond

11   the bounds of communication and cooperation under 8 U.S.C. § 1357(g)(10)

12   because there was no request for Defendants to place an immigration hold.

13        Additionally, Defendants placement of an immigration hold cannot

14   reasonably be construed as "maintaining" information regarding Sanchez Ochoa's

15   immigration status. *See* 8 U.S.C. § 1373(b). The administrative warrant is not a final

16   order of removal and it is not an immigration detainer request directed at Defendants

17   asking them to hold Sanchez Ochoa. It is a document reflecting ICE's intent to arrest

18   Sanchez Ochoa on suspicion that he is unlawfully present in the country. Again, it

19   is generally not a crime for a person who is removable in the United States to remain

20   in the United States. *Arizona*, 567 U.S. at 407. And the predicate for stopping

TEMPORARY RESTRAINING ORDER – 34

someone, let along detaining a person, is absent when police stop a person based on nothing more than possible removability from the United States. *See Santos*, 725 F.3d at 464; *Trujillo Santoyo*, 2017 WL 2896021, at *6 (discussing *Arizona* and *Santos*). Here, it is disingenuous to argue that the term "immigration hold," or similar language such as "ICE hold," means anything other than an intention not to release a person subjected to such a hold for at least some time before conferring with ICE. Indeed, as discussed, the record supports that Defendants did not intend to release Sanchez Ochoa: Director Campbell's statement that "[DOC] has confirmed that Mr. Sanchez can bail on his ICE hold," implies that Defendants understood that Sanchez Ochoa was being detained because of immigration issues, ECF No. 7-4; and the jail roster lists "immigration hold" as an offense and "ICE" as the "statute" as a reason, among others, for Sanchez Ochoa's detention with DOC, ECF No. 7-2 at 7.

Accordingly, Defendants could not "hold" Sanchez Ochoa in any sense of the word based solely on an administrative warrant that reflects only the *suspicion* that Sanchez Ochoa is removable from the United States. Exchanging information and cooperating is one thing. What happened here was quite another—it was a detention.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

### e.    No other authority permitted Defendants to place the immigration hold in reliance on the administrative warrant.

At oral argument, Defendants' counsel conceded that the administrative warrant is a civil warrant issued to immigration officers, that it authorizes immigration officers to detain the person who is the subject of the administrative warrant, and that Yakima County officials could not enforce the warrant. Only the United States argues that Defendants could act on the administrative warrant. ECF No. 26 at 35–47. The United States argues that it cannot be the case that federal officials can legally execute an administrative warrant yet it would be illegal for state and local officials to do so. In making its argument, the United States relies on a litany of cases stating that law enforcement routinely relies on other officers' and jurisdictions' probable cause determinations. In short, the United States argues that cooperating state and local governments and officers (1) can rely on ICE's probable cause determination under the "collective knowledge" doctrine and (2) temporarily detain removable persons at the federal government's request or direction based solely on probable cause of a civil immigration violation. *Id.*

Sanchez Ochoa counters that state and local officials cannot rely on administrative warrants issued by someone other than a neutral magistrate. He further argues that though the federal statutory and regulatory scheme permits federal officials to execute administrative warrants, it does not follow that state and local officials may also rely on and execute such warrants. ECF No. 27 at 5–8.

TEMPORARY RESTRAINING ORDER – 36

i.    **The collective knowledge doctrine does not apply in this case and the Court declines to extend it to the immigration context.**

Relying on the "collective knowledge" doctrine, the United States asserts that "[i]t is well-established that Local officers are entitled to rely on ICE's findings of probable cause as articulated in the administrative warrant." ECF No. 26 at 35. The "collective knowledge" doctrine allows courts to "determine whether an investigatory stop, search, or arrest complied with the Fourth Amendment by look[ing] to the collective knowledge of the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged action]." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (citations and quotation marks omitted). The United States concedes that courts have not previously applied this rule in the immigration context or to violations of civil law. ECF No. 26 at 37.

On this point, the court's reasoning in *Trujillo Santoyo* is instructive. 2017 WL 2896021. There, on summary judgment, the court considered, among other things, whether Bexar County's policy of honoring ICE detainer requests was "the moving force" behind violations of Trujillo Santoyo's Fourth and Fourteenth Amendment rights which led to his unlawful detention. *Id.* at *8. In finding that yes, Bexar County's policy was indeed the moving force behind the constitutional

violations Trujillo Santoyo alleged, the court discussed the "collective knowledge" doctrine and found that county officials there were not entitled to rely upon ICE's probable cause determination. *Id.* at *6. First, the court was skeptical that the "probable cause requirements between County officials and 8 U.S.C. § 1357(d)(1) were interchangeable." *Id.* The court nevertheless assumed, for the sake of argument, that the requirements were interchangeable, but went on to find that the "collective knowledge" doctrine did not apply there because "the record [did] not indicate any communication or cooperation between the ICE personnel who made the probable cause determination and the County officials who processed the detainer request." *Id.*

Although in the instant case there is no detainer request, just an administrative warrant, the *Trujillo Santoyo* court's reasoning is persuasive. Here, Officer Gladish was the officer who made the probable cause determination. ECF No. 7-1 at 5. To make that determination, he allegedly relied on the information Officer Hawkinson presented to him. ECF No. 26-1 at 3. The record does not indicate that Gladish interacted with Yakima County officials at all. At most, the only interaction between ICE personnel and Defendants related to Sanchez Ochoa's case is Officer Hawkinson's handing a copy of the executed Form I-200 to Yakima County jail staff. *Id.* That ICE officers are in Yakima County jail almost daily and that Officer Hawkinson interviewed Sanchez Ochoa, *Id.*, says nothing about communication or

cooperation between the ICE officer who made the probable cause determination, Gladish, and the County officials who placed the immigration hold.

Accordingly, the "collective knowledge" doctrine does not provide a basis for Defendants to rely on ICE's probable cause determination.

### ii.    Defendants were not authorized to temporarily detain Sanchez Ochoa.

Furthermore, to the extent the United States argues that Defendants here could temporarily detain Sanchez Ochoa at the federal government's request or direction based solely on the probable cause determination of a civil immigration violation, the Court disagrees. As discussed above, the Court has determined that there was no request, direction, authorization, or other instruction from federal authorities to Defendants asking for Sanchez Ochoa's detention and Defendants could not rely on ICE's probable cause determination. Accordingly, this argument also fails.

### 5.    Because Defendants cannot enforce immigration laws and do not otherwise have the authority to detain Sanchez Ochoa, Sanchez Ochoa is likely to succeed on the merits of his Fourth Amendment claim.

Courts around the country have held that local law enforcement officials violate the Fourth Amendment when they temporarily detain individuals for immigration violations without probable cause. *Santos v. Frederick Cnty. Bd. of Com'rs*, 725 F.3d 451, 468 (4th Cir. 2013); *Miranda-Olivares v. Clackamas Cnty.*,

No. 3:12-cv-02317-ST, 2014 WL 1414305 at *11 (D. Or. Apr. 11, 2014) ("the Fourth Amendment applies to County's detention of Miranda-Olivares after she was entitled to pre-trial release on bail."). Having already determined that (1) Defendants' placement of the immigration hold caused his detention beyond the time he would otherwise be in Yakima County's custody, (2) Defendants have no authority to effectuate the administrative warrant because they cannot enforce immigration laws, and (3) no other authority allowed them to act upon the administrative warrant, Sanchez Ochoa is likely to show that Defendants have violated his Fourth Amendment rights. Defendants are local government actors; therefore they are acting under the color of state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."); *Chudacoff*, 649 F.3d 1143, 1149 (9th Cir. 2011) (citing *Lugar*, 457 U.S. at 928) ("The 'under color of law' requirement under § 1983 is the same as the Fourteenth Amendment's 'state action' requirement.")

Accordingly, Sanchez Ochoa has demonstrated that he is likely to succeed on the merits of his Fourth Amendment claim.

**C.  The balance of the hardships and public interest inquiries merge and tip sharply in favor of Sanchez Ochoa.**

When the government is a party to a dispute where a plaintiff seeks a preliminary injunction, the balance of the hardships and public interest factors

TEMPORARY RESTRAINING ORDER – 40

1    merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)

2    (citation omitted). Since the standard for issuing preliminary injunctions and TROs

3    is the same, the factors merge when deciding whether to grant a TRO as well. *See,*

4    *e.g.*, *Koller*, 224 F. Supp.at 875. In considering these factors, courts must consider

5    "competing claims of injury and must consider the effect on each party of the

6    granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.

7        Here, if the Court does not issue a TRO, Sanchez Ochoa will continue to be

8    held in DOC's custody, even though a state Superior Court judge has already

9    determined that he is eligible for pre-trial release on his state criminal charges.

10   Sanchez Ochoa represents that his state court trial, currently scheduled for August

11   7, 2017, is likely to be delayed, so it is unclear how long he might be held in pre-

12   trial detention. ECF No. 6 at 10.

13       Defendants assert that balancing the equities here is "largely an academic

14   exercise." ECF No. 24 at 7. They also do not identify any harm they would suffer

15   should a TRO issue.

16       The Court disagrees that the question here is largely academic. Irrespective

17   of what happens once Sanchez Ochoa is released from Yakima County's custody,

18   a TRO will materially impact him. If he posts his $50,000 bond, he will be released

19   from Yakima County's custody.

20

TEMPORARY RESTRAINING ORDER – 41

Moreover, to the extent Defendants argue that a TRO will create confusion about liability, ECF No. 24 at 8, the Court disagrees. A TRO will clarify, pending the resolution of this case, that Sanchez Ochoa has demonstrated that Defendants' reliance on an administrative warrant to place an immigration hold likely violated Sanchez Ochoa's Fourth Amendment rights. Defendants have not identified any potential liability they would face as a result of this ruling, and Defendants can choose to amend their policies and practices however they see fit.

The Court finds that the balance of the hardships tips sharply in Sanchez Ochoa's favor.

**D.     Sanchez Ochoa will suffer irreparable harm in the absence of a TRO.**

Defendants argue that the relief Sanchez Ochoa seeks is already available to him and he therefore will not suffer irreparable harm. ECF No. 24 at 6–7. However, as discussed above, the Court has determined that he is likely to prevail on the merits of his Fourth Amendment claim. "It is well establish that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Accordingly, the Court finds that this factor is met.

**E.     Sanchez Ochoa is not required to post a bond.**

Defendants ask the Court to require that Sanchez Ochoa post a security bond because it granted the requested relief. ECF No. 24 at 9. Defendants assert that they

TEMPORARY RESTRAINING ORDER – 42

may have "unforeseen civil liability arising from restrictions on the ability of Yakima County to manage its jail operations consistent with past practice." ECF No. 24 at 9. Federal Rule of Civil Procedure 65(c) instructs that courts may issue a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Though this language appears mandatory, district courts have discretion to set the security bond amount, if any. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). Particularly, a "district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (citation and quotations marks omitted).

Here, Defendants make reference only to "unforeseeable civil liability." ECF No. 24 at 9. The relief the Court is granting affects the status of only one individual, Sanchez Ochoa. It is very unlikely that, based solely on this Order, Defendants will be subject to substantial civil liability. Accordingly, the Court declines to order Sanchez Ochoa to post any security bond.

## VI.    CONCLUSION

Based on the record presented to the Court, applicable law, and for the reasons detailed above, the Court grants Sanchez Ochoa's request for a temporary restraining order. The purpose of this order is to ensure that Sanchez Ochoa will be

1   able to post bail on his state charges, and that he will be physically released from

2   DOC custody upon doing so.

3        Accordingly, it is hereby **ORDERED**:

4   1. Plaintiff Sanchez Ochoa's Motion in Support of Temporary Restraining

5      Order, ECF No. 6, is **GRANTED**;

6   2. Defendants Ed W. Campbell, Director of Yakima County Department of

7      Corrections; Scott Himes, Chief of the Yakima County Department of

8      Corrections; Yakima County, and all their respective officers, agents,

9      servants, employees, attorneys, and persons acting in concert or participation

10     with them **SHALL**:

11        a. Immediately remove the immigration hold presently in place against

12           Mr. Antonio Sanchez Ochoa from the jail roster, and

13        b. physically release him should he post bail on his state criminal charges;

14  3. Defendants Ed W. Campbell, Director of Yakima County Department of

15     Corrections; Scott Himes, Chief of the Yakima County Department of

16     Corrections; Yakima County, and all their respective officers, agents,

17     servants, employees, attorneys, and persons acting in concert or participation

18     with them are **PROHIBITED** from placing an immigration hold on Mr.

19     Antonio Sanchez Ochoa's jail roster again at some future time based solely

20     on the administrative warrant at issue here, ECF No. 7-1 at 5;

**4.** Defendants Ed W. Campbell, Director of Yakima County Department of Corrections; Scott Himes, Chief of the Yakima County Department of Corrections; Yakima County, and all their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them are **PROHIBITED** from relying on the administrative warrant at issue here, ECF No. 7-1 at 5, to communicate to third parties that Mr. Antonio Sanchez Ochoa is being "held" because of his immigration status. This should not be read to conflict with 8 U.S.C. § 1373 or other applicable law concerning disclosure of information about Sanchez Ochoa's immigration status.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 31st day of July 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge