FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 10, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTONIO SANCHEZ OCHOA, | No. 1:17-CV-03124-SMJ |
| Plaintiff, | |
| v. | **ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| ED W. CAMPBELL, Director of Yakima County Department of Corrections; SCOTT HIMES, Chief of the Yakima County Department of Corrections; and YAKIMA COUNTY, | |
| Defendants. | |

Plaintiff Antonio Sanchez Ochoa alleges a 42 U.S.C. § 1983 claim against Ed W. Campbell, Director of the Yakima County Department of Corrections ("County DOC"), Scott Himes, Chief of the DOC, and Yakima County (collectively, "Defendants") for violating his Fourth Amendment rights. ECF No. 1. Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages. *Id.* at 10–11.

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 59. Defendants request the Court grant summary judgment in its favor on all of Plaintiff's claims. Also before the Court is Plaintiff's Cross-Motion for Partial

Summary Judgment, ECF No. 76. Plaintiff requests partial summary judgment against Defendant Yakima County (the "County") only.

The Court held a hearing on the motions on September 6, 2018. Having reviewed the pleadings and the file in this matter, and having heard the parties' arguments on the record, the Court is fully informed and, for the following reasons, denies both motions.

## I.     LEGAL STANDARD

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party has the initial burden of showing that no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must point to specific facts establishing a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87

(1986).

"[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & Cty. of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). If the non-moving party fails to make such a showing for any of the elements essential to its case as to which it would have the burden of proof at trial, the trial court should grant the summary judgment motion. *Celotex*, 477 U.S. at 322.

The Court is to view the facts and draw inferences in the manner most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999). And, the Court "must not grant summary judgment based on [its] determination that one set of facts is more believable than another." *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009).

## II.    BACKGROUND[1]

### A.    Factual Background

---

[1] In ruling on the summary judgment motions, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

On May 4, 2017, Plaintiff was arrested and booked into the Yakima County Jail (the "County Jail"). ECF No. 88. He was formally charged with second degree assault and malicious mischief. *Id.* His bail was initially set at $75,000, and was subsequently reduced to $50,000. *Id.*

On or about May 4, 2017, a U.S. Immigration and Customs Enforcement ("ICE") officer interviewed Plaintiff at the County Jail, issued a Form I-200 Administrative Warrant ("immigration warrant"), and delivered a copy of the immigration warrant to the County. *Id.* An ICE officer personally served the immigration warrant on Plaintiff. *Id.* The immigration warrant stated that the Supervisory Detention Deportation Officer Michael Gladish had found probable cause to believe that Plaintiff was removable based on his voluntary statements. *Id.* It also authorized immigration officers to "arrest and take [Plaintiff] into custody for removal proceedings." *Id.*

Upon receiving the immigration warrant, the County Jail booking staff recorded the immigration warrant in its electronic Jail Management System. *Id.* This populated the online, publicly-accessible jail register. *Id.* The jail register identifies charges and warrants issued for an inmate. The County Jail's notation of the immigration warrant is similar to the manner in which the County Jail records any notice of a warrant or criminal charges issued by another jurisdiction. ECF No. 88. Plaintiff's jail register at the time of the lawsuit's initiation indicated:

EC

F

No.

7-2.

| Inmate Name: | SANCHEZ-OCHOA ANTONIO |
| Booking Number: | 17J-04403 |
| Date In: | 5/4/2017 12:42:00 AM |
| Current Location: | YDOC-MJ Annex C |
| ID Number: | 81395 |
| Planned Release Date*: | |
| *Note(s): | Planned release date is subject to change. If a person is not sentenced on all charges the Planned Release Date will reflect the last release date known. |
| Notification Signup Website: | If you wish to sign up to receive notifications regarding changes in ANTONIO SANCHEZ-OCHOA's custody status, click this link. |

| Offense | Statute | Status | Court | Case Number | Bond Amount |
|---------|---------|--------|-------|-------------|-------------|
| IMMIGRATION HOLD | ICE | PPR | FED | | $0.00 |
| ASSAULT 1 | 9A.36.011 | NF | YSUP | 1710084839 | CHARGE NOT FILED |
| ASSAULT 2 | 9A.36.021 | PPR | YSUP | 1710084839 | $50,000.00 |
| MAL MISCHIEF 2 | 9A.48.080 | PPR | YSUP | 1710084839 | CONCURRENT |

Plai

ntif

f unsuccessfully attempted to secure bail bond services, and was unable to post bail

without such services. ECF No. 66 at 9. On July 5, 2017, Plaintiff's undersigned

counsel wrote a letter to Defendant Campbell requesting that Defendants remove

Plaintiff's immigration hold in time for the hearing for reconsideration of bail. *Id.*;

ECF No. 61-1 at 5. On July 6, 2017, Defendant Campbell responded to the letter,

saying he "confirmed that Plaintiff can bail on his ICE hold. Unfortunately, [the

County Jail] do[es] not accept the bail [there] at Yakima County Jail. It must be

processed through the Federal Courts." ECF No. 61-2.

On July 17, 2017, Plaintiff filed the present action against Defendants

pursuant to 42 U.S.C § 1983, alleging that Defendants' actions violated the Fourth

Amendment. ECF No. 1 at 10. Specifically, he asserts that Defendants' policy and

practice of detaining individuals before they are released from DOC's custody

based solely on an immigration hold issued pursuant to an administrative warrant

violates his Fourth Amendment right to be free from unreasonable seizures. *Id.* at 1–2, 10. Plaintiff alleges that such administrative warrants—issued by U.S. Department of Homeland Security personnel without a judicial warrant or independent finding of probable cause—do not provide state or local law enforcement officers authority to arrest or detain individuals for immigration violations. *Id.* at 2.

On July 25, 2017, the Court issued a Temporary Restraining Order (TRO) in favor of Plaintiff. ECF No. 32. The TRO required that the County: (1) remove the notation from its online jail roster indicating that Plaintiff was being detained pursuant to an immigration hold; (2) physically release Plaintiff should he post bond on his state charges; and (3) refrain from relying on an administrative warrant to hold or otherwise communicate to third parties that Plaintiff was being held due to his immigration status. *Id.*

On July 28, 2017, Plaintiff posted bail and was promptly released from custody. ECF No. 88. Federal immigration authorities then almost immediately apprehended Plaintiff and took him into custody. *Id.* Plaintiff was subsequently removed, i.e., deported. ECF No. 51; *Sanchez Ochoa v. Campbell*, 716 F. App'x 741, 742 (9th Cir. 2018).

On July 31, 2017, Defendant Himes emailed the County DOC sergeants, corporals, officers, and administrative and clerical staff, instructing: "[E]ffective

immediately we will no longer be accepting Immigration holds (I200) forms and *holding inmates past the time of their local charges*. We will however still be accepting inmates that ICE have arrested in other jurisdiction [sic] using (I203) forms under the current (IGA) Inter Governmental Agreement." ECF No. 78-4 (emphasis added).

Between 2014 and the present, the County accepted bail for thirty-eight individuals situated similarly with Plaintiff. ECF No. 64-1; ECF No. 88. At oral argument, Plaintiff's counsel clarified that although the County accepted bail, those individuals were not in fact released.

## B. Yakima County's Immigration Hold Policy[2]

In 2010, the County entered into an Intergovernmental Detention Services Agreement (IGA) with the United States Marshals Service. ECF No. 88. Pursuant to that agreement, federal law enforcement agencies, including ICE, detain persons in federal custody at the County Jail. *Id.* The IGA authorizes the County to accept federal detainees only upon presentation by a law enforcement officer with proper federal government agency credentials. *Id.*

No portion of the IGA authorizes the County to administratively transfer any detainee from county custody to federal immigration custody without

---

[2] Detailed explication of the cooperation between federal, state, and local officials on immigration matters is set forth in the Court's Order granting Temporary Restraining Order, ECF No. 32 at 9–15.

presentation by a federal immigration officer. *Id.* In other words, unless and until a federal immigration officer arrests a detainee, the detainee is not in immigration custody under the IGA. At all times relevant to this action, no law enforcement officer or entities in the County were certified under 8 U.S.C. § 1357(g) to enforce federal civil immigration law. *Id.*

The County DOC maintains an internal Policy and Procedures Manual (manual). ECF No. 67-6. Changes to the manual are communicated to staff via email. *Id.* Pursuant to the manual, the County DOC had its own procedure—that was not incorporated into the IGA—for effectuating an administrative transfer of inmates from county custody to federal custody within Yakima County Jail. *Id.*; ECF No. 88. The procedure consisted of four clerical steps culminating in a transfer that was designated as such on paper. ECF No. 88. The County would then fax a "notice of turn-over" to ICE. *Id.*

Throughout the transfer process, individuals were not actually released from the County Jail: they remained in their cells. *Id.* Moreover, as a matter of practice, federal immigration officers were not present when the County DOC performed an administrative transfer. *Id.* Indeed, federal immigration officers were not required to be physically present to effectuate the transfer. ECF No. 66 at 6.

### III.   DISCUSSION

**A.   Plaintiff's prayers for injunctive relief**

Defendants argue that Plaintiff's prayers for injunctive relief should be denied as moot. ECF No. 59 at 17. Plaintiff concedes that the Court "has already granted Mr. Sanchez's requested injunctive relief by issuing a TRO." ECF No. 65 at 19. The Court agrees with the parties that Plaintiff's prayers for injunctive relief are moot. As such, injunctive relief is denied.

**B.   Plaintiff's prayers for declaratory relief**

In the Complaint, Plaintiff asks the Court to declare that the County DOC policy and practice of placing immigration holds—and denying detainees the opportunity to post bail if they have such holds—based solely on administrative warrants violates the Fourth Amendment. ECF No. 1 at 10.

Defendants argue that Plaintiff's prayers for declaratory relief should also be denied as moot because Plaintiff has been removed and there is little chance that "the policies and practices challenged by Mr. Ochoa may again be enforced against him." ECF No. 59 at 16. In opposition, Plaintiff argues that the Court may nonetheless provide declaratory relief, which will serve as a predicate to a damages award and serve the purpose of clarifying the legality of the County's policy and practice. ECF No. 65 at 20–21.

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, there

must be a "case of actual controversy" before a federal court may assert jurisdiction and provide declaratory relief. In other words, federal courts may only resolve actual and concrete disputes. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013).

In this case, the mere possibility that Plaintiff could pursue nominal damages to redress constitutional violations ensures that he retains a sufficiently concrete interest in the outcome of the litigation. *See Yniguez v. Arizona*, 975 F.2d 646, 647 (9th Cir. 1992) (per curiam) ("A plaintiff's pursuit of nominal damages provides a sufficiently concrete interest in the outcome of the litigation to confer standing to pursue declaratory relief and thereby prevents mootness."). Moreover, Plaintiff seeks to clarify the legality of Defendants' policy and practice, which is not affected by Plaintiff's removal.

Accordingly, the Court rejects Defendants' argument to deny Plaintiff declaratory relief.[3]

## C.    Plaintiff's § 1983 claim for compensatory damages.

---

[3] The Court rejects Plaintiff's argument that the Court "must" issue declaratory relief as a predicate to a damages award. ECF No. 65 at 21. It is well settled that § 2201 authorizes, rather than commands, a court to consider a claim for declaratory relief. *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) ("The [Declaratory Judgment] 'Act gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'" (quoting *Rickover*, 369 U.S. at 112)).

A plaintiff seeking both injunctive relief and money damages may pursue a case even after the request for an injunctive relief is rendered moot. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 370–71 (1982) (case not moot because plaintiff would be entitled to liquidated damages if defendants found liable). As such, the Court inquires into the merits of Plaintiff's claim for compensatory damages.

To establish liability under 42 U.S.C. § 1983, "a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). Municipalities may be subject to damages liability under § 1983.[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). As such, the Court needs to engage in only one analysis for all three defendants: did the County violate Plaintiff's Fourth Amendment rights?

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. Moreover, it only protects against governmental action. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

---

[4] Defendants assert in their Answer that Plaintiff has failed to establish municipal liability pursuant to *Monell*. ECF No. 21 at 9. But Defendants do not raise this argument in their summary judgment motion. *See* ECF No. 59.

Whenever an officer restrains the freedom of a person to walk away, he has seized that person. *Brower v. Cty. of Inyo*, 489 U.S. 593, 595 (1989) (discussing seizures in the context of a police roadblock). While a seizure may involve "intentional acquisition of physical control," it can also occur when "an unintended person or thing is the object of the detention or taking" as long as the detention or taking itself is willful. *Id.* at 596. In other words, a seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id.*; *see also Scott v. Harris*, 550 U.S. 372 (2007) (reaffirming this intentionality requirement).

While the mention of "intent" may invite arguments as to governmental motive, the "intent that counts under the Fourth Amendment is the intent that has been conveyed to the person confronted, and the criterion of willful restriction on freedom of movement is no invitation to look to subjective intent when determining who is seized." *Brendlin v. Cal.*, 551 U.S. 249, 261 (2007). In short, subjective intentions play no role, and courts must focus on the objective manifestations of governmental conduct.

In this case, the threshold issue is whether there was a Fourth Amendment seizure—in this case, a "new" seizure subsequent to the initial arrest. If so, it must be supported by probable cause. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017). Defendants argue that no seizure occurred by the mere "immigration hold"

notation on the jail register.[5] ECF No. 59 at 5–10. Plaintiff argues that the placement of the notation, which was to ensure that he would not be physically released, is evidence of the seizure. ECF No. 65 at 6–18.

### 1. Genuine disputes of material facts remain.

The Court concludes that Defendants and Plaintiff have not met their respective burdens to show that no reasonable trier of fact could find other than in their favor. Specifically, they cannot unambiguously show that there was—or was not—a seizure because genuine disputes of material facts remain. And so, they cannot know that the County did or not did have a policy of detaining individuals in reliance on the immigration warrants, and discouraging individuals from posting bail. *See* ECF No. 76 at 8–9.

As the parties agree, in order to determine whether there was a new seizure, Defendants must have detained Plaintiff through means intentionally applied. *See Brower*, 489 U.S. at 596. To argue in the affirmative, Plaintiff must show that due to the County's policy, the notation itself was evidence of Defendants' intention to

---

[5] While Defendants also argue in detail that Defendants Campbell and Himes are protected by qualified immunity, the Court sees no need to entertain this argument because they are being sued in their official capacities, not their individual capacities. *See* ECF No. 1 at 3. It is well settled that qualified immunity is not available to officers sued in their official capacities. *See e.g.*, *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993) ("A municipality (and its employees sued in their official capacities) may not assert a qualified immunity defense to liability under Section 1983." (citing *Owen v. City of Indep., Mo.*, 445 U.S. 622, 638 (1980))); *Eng v. Cooley*, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009).

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT- 13

*automatically* continue his detention even if he posted bail.[6] This would show that Plaintiff's detention was a "willful" and intended consequence of the notation—and a new seizure. A showing of anything less would make Plaintiff's claim entirely speculative.

Indeed, Plaintiff asserts that even if he had posted bail, he would not have been released because Defendants would have begun the administrative transfer process to ICE. The record shows that on July 31, 2017, Defendant Himes emailed staff indicating they would no longer be accepting I-200 immigration warrants and "holding inmates past the time of their local charges." Construing the email in Plaintiff's favor, this suggests that up until then, the County was accepting such warrants to continue holding inmates even upon release from county custody.

However, construing the facts in Defendants' favor, it is "impossible" to

---

[6] While Plaintiff additionally argues that the notation prevented him from accessing bail bond services, this argument is unpersuasive in the Fourth Amendment context. Since the Court granted the TRO, no further evidence has been introduced to show that Defendants' objective was to prevent access to bail bond services. Defendants' objective manifestation was apparently to document that Plaintiff would be released to ICE upon release from county custody, not to obstruct bail bond services. ECF No. 59. Even if it were Defendants' *subjective* motive to prevent Plaintiff from accessing bail bond services, the Fourth Amendment seizure inquiry only looks to objective manifestations. *See Brendlin*, 551 U.S. at 261. While Plaintiff cites *Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014), as "controlling" during the TRO hearing and again in its opposition brief, *Mendia* is of limited applicability with its standing analysis—Defendants do not challenge Plaintiff's standing to bring this claim. More importantly, the *Mendia* plaintiff never brought a Fourth Amendment challenge: instead, the inquiry surrounded the *right to bail*. *See Mendia v. Garcia*, No. C 10-3910 MEJ, 2012 WL 948814, at *2 (N.D. Cal. Mar. 20, 2012) (emphasis added).

know because Plaintiff did not in fact post bail prior to the Court's TRO, and because it is not uncommon for ICE to cancel I-200s. *See* ECF No. 93 at 3. This creates a genuine dispute as to the consequences of the immigration hold notation.

Furthermore, a genuine dispute remains as to whether Defendants would have even accepted bail, considering Defendant Campbell wrote Plaintiff's counsel saying they do not accept bail there and federal courts had to get involved. ECF No. 61-2. This would suggest that Defendant Campbell himself considered Plaintiff to not be in county custody.

Because these disputes affect the outcome of the litigation, a trial is necessary to resolve the matter. *See Seaboard*, 677 F.2d at 1306.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 59**, and Plaintiff's Cross-Motion for Partial Summary Judgment, **ECF No. 76**, are **DENIED**.

2. Plaintiff's prayers for injunctive relief are **DENIED**.

**IT IS SO ORDERED**. The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 10th day of September 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge